15 So.2d 278

## LANIER v. STATE.

### 5 Div. 193.

Court of Appeals of Alabama.
June 30, 1943.

Rehearing Denied Aug. 10, 1943.

Reynolds & Reynolds, of Clanton, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

Upon an indictment which charged this appellant with murder in the first degree, he was tried and convicted of the offense of manslaughter in the first degree. The jury fixed his punishment at five years imprisonment, and in accordance with said verdict, the court duly adjudged him guilty and sentenced him to the penitentiary for the period of five years.

There is but slight, if any, conflict in the evidence adduced upon the trial of this case. As stated, the indictment charged the accused with the offense of murder in the first degree. We are free to state this was ill-advised and wrong. There was nothing in the evidence showing or tending to show malice or premeditation or deliberation, on the trial in the court below; hence, certainly, there could have been no such testimony before the grand jury. The finding of said indictment for first degree murder upon the evidence was unwarranted for the reasons stated. There was no proof to sustain this charge and in all presentments and cases before a grand jury no indictment should be found and presented where there is no evidence to sustain the charges contained therein. Furthermore extra work and must greater expense to the county is entailed to no good purpose.

The principal insistence of error upon this appeal, and likewise upon the trial below, as shown by the record, is that the evidence was not sufficient even to sustain a conviction of manslaughter in the first degree.

It clearly appears without conflict that the deceased, William alias Will Rogers, came to his death as a result of a blow intentionally struck by this appellant which landed upon the chin of deceased with sufficient force to knock him (Rogers) down causing his head to hit the cement pavement. This happened on the night of August 29, 1942, and he died September 2, 1942, from the resulting injury of said blow. Dr. Edwin Day testified, among other things:

"I knew William Rogers, the deceased, in his life time, and I was called to see him about the latter part of August of last year; he was being brought into my clinic at Maplesville, Alabama, about ten thirty or eleven o'clock at night on Saturday. As to his condition at that time, he was absolutely unconscious, he had a bruise at the point of the left jaw, a large Haematoma at the base of his skull, a bloody discharge from his nose, and left ear. He was unconscious. He is dead now. In my judgment, as a physician, that was a wound that was calculated to produce death, and it did produce his death. As to the cause of those injuries, it was caused from a blow—the one on his jaw in front and the one at the base of his skull. The injury at the base of his skull was a large bruise or Haematoma and a bruise on his body that was bleeding. From the symptoms, I would say that he has a fracture of the skull.

"In my judgment, Mr. Rogers was around fifty years of age. His weight was possibly between 160 and 170 pounds. He apparently was a man in good health before this occasion. I think he worked at the sawmill, a man who did manual labor.

"There were no other symptoms that I noticed with respect to Mr. Rogers that were indicative of a fracture. There was blood running out of his ears. He had an involuntary movement of his kidneys. His clothes were soiled with urine. That indicated an injury to the base of the brain, and that is a medical fact."

The State insists that the blow causing the death of Mr. Rogers was struck by appellant without any cause, provocation or excuse, and in this record there appears evidence tending to sustain this insistence.

State witness Probst, testified: "My name is J. E. Probst and I am a member of the State Highway Patrol. I know Lanier in this case. The first I knew of him was when we got him out of jail in Birmingham. It was several months ago and was immediately after I heard of an occurrence in which he was involved at Maplesville. I had a conversation with the defendant on that day. I did not offer him any inducement, hold out any hope of reward, or make any threats to him to induce him to make a statement, or no one in my presence or hearing did. The defendant made a statement on that occasion. I asked him why he was in Birmingham, and he said, 'Well, on account of what I have done over there I decided I better leave.' I said then, 'You are the boy that hit Mr. Rogers?' He said, 'Yes sir.' He said, 'Captain, I am going to tell you the truth all the way through.' I asked him, )I said, 'What did you hit him with?' He said, 'Captain, I hit him with my fist.' I said, 'You mean you didn't have a pair of knucks or a stick?' He said, 'No sir, Captain, I hit him. I hit him with everything I had.' I said, 'Well, did Mr. Rogers say anything to you?' He said, 'No sir.' I said, 'Well, in other words, you just stepped up there and knocked hell out of him?' He said, 'Yes sir, Captain, I am telling you the truth. That is all I am going to do.' We talked on to him, and that was his statement all the way through,—that he just stepped up there and hit him with everything he had, was the way he termed it. That is in substance to what he said and he made that statement to me and Mr. Johnson voluntarily."

Excellent briefs by respective counsel have been filed. These have been carefully considered. There is but slight controversy, if any, as to the law involved in this case. Generally, it is the law that every person intends to do what he does, and that the natural, necessary, and probable consequences of his acts were intended. In the instant case, as we see it, the trend of the evidence tended to show that the appellant entered into the fatal difficulty of his own volition. There is nothing to show that deceased uttered a word to defendant, or committed any overt act of any nature. The insistence that deceased probably never knew who hit him the blow that caused his death, appears tenable under the evidence. State witness, Wallace, among other things, testified: "This Benjamin Lanier came up kind of behind Mr. Rogers and

just before this negro hit Mr. Rogers he kind of turned around sideways and the negro hit him on the jaw and knocked him down and his head hit the cement. When I say Mr. Rogers I mean Will Rogers. He fell then and hit the cement with his head. At the time Clarence Lanier hit Mr. Will Rogers, I was about fifteen feet away. Clarence did not say anything to him and Mr. Rogers did not say anything to Clarence, there was nothing said between them at all. There was one lick passed between Clarence and Mr. Rogers and immediately by the time that lick landed he fell back like that. I heard the lick of his head on the paving. He just fell over there like a log." This testimony was without dispute or conflict.

The general rule as stated in Diamond v. State, 219 Ala. 674, 676, 123 So. 55, 57, is pertinent here. The court said: "As a general rule, when a person enters into combat with another, intending no more serious injury than an ordinary battery, and no weapon is used, and death ensues, the person thus causing death, if his acts were wrongful or unlawful, and nothing more appears, would be guilty of no higher grade of homicide than manslaughter in the first degree."

The court in its oral charge, as well as in a large number of given charges, gave to the jury fully, and correctly, the applicable law to this case and in this connection we are clear to the opinion the substantial rights of the defendant were fully and carefully protected by the court. In other words, the evidence in this case presented a question for the jury to determine. We find no reversible error in any ruling of the court, therefore it follows that the judgment of conviction from which this appeal was taken must stand affirmed.

Affirmed.