272 So.2d 590

James H. HALL

v.

STATE.

3 Div. 20.

Court of Criminal Appeals of Alabama.

Jan. 23, 1973.

382

MacDonald Gallion, Atty. Gen. and George W. Hodges, Jr., Asst. Atty. Gen., for the State.

ALMON, Judge.

The indictment charged that James H. Hall unlawfully and with malice aforethought killed Floyd Eugene Vann by choking him with his hands. The defendant claimed self defense. A jury found him guilty of manslaughter in the first degree and fixed his punishment at imprisonment in the penitentiary for three years. He was adjudged guilty by the court and sentenced in accordance with the jury verdict.

The homicide occurred in the defendant's locked cell at Kilby Prison. The cell was described as being eight by ten feet with a double bunk bed and a toilet. The walls were concrete and the door was "barred."

The evidence tended to show that on April 30, 1969, the deceased was removed from his cell because it was "flooded" and placed in the defendant's cell. Early the following morning guards who had been summoned by the defendant found the body of the deceased on the floor of the cell. A state toxicologist testified that in his opinion death was caused by strangulation. According to the testimony, the deceased had harassed the defendant throughout the night, several times threatening his life. Early the next morning, according to the defendant's testimony, Vann cursed him and he slapped Vann. When

——◆——

Rushton, Stakely, Johnston & Garrett and N. T. Braswell, III, Montgomery, for appellant.

this occurred Vann came toward the defendant with a knife and a struggle ensued. The defendant was choking the deceased with one hand while attempting to knock the knife from the deceased's hand with the other hand. After the defendant succeeded in taking the knife from the deceased, the deceased began to choke the defendant. At some point the deceased lost the struggle and the defendant called for the guards.

Other inmates testified that they heard the deceased threaten the defendant during the night. Some claimed to have seen the struggle through the door and testified that the deceased was armed with a knife.

Further testimony indicated the deceased was often seen with a knife in his possession and that he had on several occasions inflicted wounds upon himself. The defendant was aware of these propensities. A staff conference report from Partlow State School showed the deceased to be retarded and subject to psychotic episodes.

On cross-examination the state toxicologist testified that it was his opinion that the deceased died from external pressure on the neck; that this pressure caused death by asphyxiation; that in disecting the neck he examined the trachea, which is the air tree in the region of the neck, and found no evidence of any fractures; that in many cases strangulation caused massive damage to the trachea but not in all cases; that a person could die of injury to the throat due to shock effect of the pressure causing instantaneous death; and that this type death had to do with the carotid sinus, which is a nerve center in the carotid arteries on each side of the neck.

In charging the jury the trial court explained the definition and elements of first and second degree murder and then continued as follows:

"Manslaughter in the first degree, do away with malice, do away with the premeditation and deliberation. And an intentional murder done without legal justification or excuse.

"So for murder in the first degree all four ingredients must exist and co-exist. Murder in the second degree, you just have two. It is unlawful homicide committed wilfully and deliberately. Manslaughter in the first degree is unlawful homicide committed wilfully. That is intentionally."

The trial court also charged the jury on three occasions that "the law says a person is presumed to intend to do that which he does." There was proper objection to these statements by defense counsel at the conclusion of the oral charge.

The defendant argues in brief that intent is an element which must be proven by the prosecution and that the trial court, by charging as he did, in effect instructed the jury to find that the defendant intended to kill the deceased.

■ To constitute manslaughter in the first degree there must be either a positive intent to kill or an act of violence from which ordinarily in the usual course of events death or great bodily harm may be the consequence. Reynolds v. State, 24 Ala.App. 249, 134 So. 815; Harrington v. State, 83 Ala. 9, 3 So. 425; Williams v. State, 83 Ala. 16, 3 So. 616; Clayton v. State, 36 Ala.App. 175, 54 So.2d 719.

The trial judge, however, limited his charge on first degree manslaughter to that kind which is intentionally done. The trial judge did not charge the jury that first degree manslaughter could result from an act of violence from which ordinarily in the usual course of events death or great bodily harm may be the consequence. He charged that manslaughter is "an intentional *murder* done without legal justification or execution." Obviously, he intended to say "homicide" rather than "murder" but the record before us indicates the use of the word, "murder."

Thus, we have a case where the deceased was killed by the hands of the defendant and the jury was instructed by the court that voluntary manslaughter requires a positive intent to kill and that the law presumes a person intends to do that which he does.

Statements similar to the one objected to in this case have been made numerous times in appellate decisions. Usually they begin with the word, "generally," and conclude with, "and that the natural, necessary, and probable consequences of his acts were intended." Sometimes the concluding phrase, "unless it is shown to the contrary," is added. Jacobs v. State, 17 Ala. App. 396, 85 So. 837; Jones v. State, 29 Ala.App. 126, 193 So. 179; Lanier v. State, 31 Ala.App. 242, 15 So.2d 278; Williams v. State, 13 Ala.App. 133, 69 So. 376; Johnson v. State, 32 Ala.App. 217, 24 So.2d 228.

It should be observed however that statements like the above have almost exclusively been used in opinions of appellate decisions. We have not been cited nor has our research revealed a case where such a statement has been approved as a proper charge to the jury. On this point Mr. Justice Coleman's observation in Knight v. State, 273 Ala. 480, 142 So.2d 899, is pertinent:

"Statements of law in judicial opinions are not always proper for jury instructions in other cases. Mobile Infirmary v. Eberlein, 270 Ala. 360, 367, 119 So.2d 8. Lifting language from an opinion and embodying it in a written charge does not of itself make it a correct instruction to the jury. Lakey v. State, 258 Ala. 116, 122, 61 So.2d 117. Much is properly said in the opinions of appellate courts which is not proper to be given in charge to juries. Kansas City, M. & B. R. Co. v. Matthews, 142 Ala. 298, 313, 39 So. 207. To like effect, see Woodbury v. State, 69 Ala. 242; Thompson v. Alexander City Cotton Mills Co., 190 Ala. 184, 194, 67 So. 407; Gray v. Anderson, 241 Ala. 154, 157, 1 So.2d 384; Harper v. State, 16 Ala.App. 153, 75 So. 829."

Perhaps the practice of drafting charges to the jury from judicial opinions led to the situation in Hale v. State, 45 Ala.App. 97, 225 So.2d 787, where this Court recognized the distinction between an inference and a presumption.

A somewhat analogous situation existed in Oliver v. State, 17 Ala. 587, where the Court observed:

". . . To constitute this offence the criminal intent and the act must both concur, and this intention is a fact to be inferred from the evidence, and can be ascertained only by the jury. The presumption of one fact from another is a presumption of fact, and unless the law itself draws the inference, the jury alone can do it. In the case of Costillo & Keho v. Thompson, 9 Ala. 937, it was said that the court cannot pass upon the effect of testimony, when the question to be determined is whether an act was done with a fraudulent intent. To the same effect is the case of Weed & Fanney v. Evans, 2 Speers [S.C.], 232; see, also, [Diehl v. Ihrie] 3 Whart. [Pa.] 143; [Gwatkin v. Commonwealth] 9 Leigh [Va.], 678 [33 Am.Dec. 264]; Lindsay v. Lindsay, 11 Vt. 621.

"There are cases, as we shall presently see, where the law will itself imply one fact from the existence of another. This, however, would be legal presumption. But in reference to the question now under consideration, there was no one fact proved from which the law would or would not have drawn the inference of a felonious intent, or from which it would have denied the existence of such intention. It was therefore peculiarly the province of the jury to determine the intention that influenced the deceased, for on that would have depended his guilt or innocence: And as the judge undertook to pronounce that the deceased would not have been guilty of a felony, without regard to his intention, or without leaving the question of intention to the jury, he assumed to determine the facts, and consequently erred."

A somewhat different charge, yet of like import, was criticized in Cohen v. United States, 9 Cir., 378 F.2d 751:

"Appellant objected to the following passage in the instructions:

"As a general rule, it is reasonable to infer that a person ordinarily intends all the natural consequences of acts knowingly done or knowingly omitted. So unless the evidence in the case leads the jury to a different or contrary conclusion, the jury may draw the inference and find that the accused intended all of the natural and probable consequences which one standing under like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused.

"Although repeatedly criticized, an instruction of this general tenor continues to appear in charges to the jury. Its use is an invitation to reversal. 'Despite its ancient vintage, see Agnew v. United States, 165 U.S. 36, 53, 17 S.Ct. 235, 41 L.Ed. 624 (1897), utterance of the quoted platitude serves no useful purpose, since insofar as the statement has logical validity the jury would know it anyhow' and, more important, it may, in some contexts, mislead the jury. United States v. Barash, 365 F.2d 395, 402 (2d Cir. 1966). The jury may mistakenly believe that it is permissible to infer specific knowledge or intent solely from the doing of a particular act, without regard to the totality of circumstances; or that the occurrence of the particular acts shifts the burden of proof of knowledge or intent from the prosecution to the defense; or that the question is whether a reasonable man in similar circumstances would have had the requisite knowledge or intent, rather than whether the accused actually had it. United States v. Barash, supra; Mann v. United States, 319 F.2d 404, 409 (5th Cir. 1963). Cf. Chappell v. United States, 270 F.2d 274,

279–280 (9th Cir. 1959); Bloch v. United States, 221 F.2d 786, 788 (9th Cir. 1955); Wardlaw v. United States, 203 F.2d 884, 887 (5th Cir. 1953)."

We, therefore, are of the opinion that the trial court was in error in charging the jury that the law presumes a person intends to do that which he does where the subjective intent of the defendant determines whether a crime has been committed at all and, if so, the character of the crime.

The trial judge also erroneously charged the jury that the burden of proving self defense was on the defendant. There was no exception by defense counsel to this portion of the oral charge. Since a new trial is in order we call the court's attention to the cases of Key v. State, 47 Ala.App. 692, 260 So.2d 422, and Lester v. State, 270 Ala. 631, 121 So.2d 110.

The judgment of conviction is due to be reversed and the cause remanded for new trial.

Reversed and remanded.

All the Judges concur.