293 So.2d 877

**Leverne PAYNE, alias**

**v.**

**STATE.**

**7 Div. 274.**

Court of Criminal Appeals of Alabama.

April 23, 1974.

Burns, Carr, Shumaker & Davis, Gadsden, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Samuel L. Adams, Special Asst. Atty. Gen., Dothan, for the State.

HARRIS, Judge.

Appellant went to trial with retained counsel on an indictment charging him with murder in the first degree. Upon formal arraignment he pleaded not guilty. The jury found him guilty of murder in the second degree and fixed his punishment at fifteen years imprisonment in the penitentiary. The judgment and sentence were in accordance with the verdict of the jury. After conviction he was declared indigent and furnished a free transcript and one of his trial lawyers was appointed to represent him on appeal.

The killing occurred around midnight on July 22, 1973. The deceased was admitted to a local hospital and died shortly thereafter. About one o'clock a. m. on July 23, 1973, the coroner of Etowah County, Alabama, examined the body. He found three gunshot wounds. One was to the skull about an inch above the left eyebrow which ranged downward. Another one was in the chest about four inches below the right nipple. The third wound was in the right groin just in the pubic hair line. He testified that the deceased died from these multiple wounds associated with internal hemorrhage. Photographs of the body showing these wounds were admitted in evidence without objection. All of the entrance wounds were in the front side of the body. There were no powder burns in and surrounding these wounds showing the shots were not fired at close range.

The shooting took place just outside a Negro nightclub in Gadsden. Appellant and a friend, Fred Crawford, went to this nightclub in the early evening hours on the night of the shooting. They sat at a table and drank vodka until just before the trouble started. A few minutes before twelve o'clock appellant's sister and his girlfriend came to the club and sent someone in to tell appellant and Crawford to come outside. Crawford was appellant's sister's boyfriend.

According to the testimony of appellant's sister she saw appellant and Crawford come out the front door of the club and walk to where she and the other girl were standing near a parked car. She saw Crawford with a pistol which he was holding down by his side. She then saw the deceased emerge from a side door to the club and engage two men in a conversation. She observed the deceased looking in the direction of appellant and saw Crawford hand the pistol to appellant. She stated that a few minutes later she heard three shots and saw the deceased fall and everyone run from the scene. She did not see a pistol in the hands of the deceased and heard no words spoken by anyone prior to the shooting. She did not know the dead man before this night.

Appellant testified in his behalf and so did Crawford and several other witnesses. According to the testimony of appellant and Crawford, they went to this nightclub together arriving around ten o'clock p. m. Appellant was armed with a .22 caliber pistol. He did not personally know the deceased but had heard of him. The deceased had a bad reputation for violence in the community,[1] and had a bad reputation for carrying a pistol. (Clinkscale v. State, 37 Ala.App. 593, 73 So.2d 244). The de-

---

[1]. The rule laid down in Wilson v. State, 31 Ala.App. 21, 11 So.2d 563, h. n. 16, relative to proving the general character of the deceased for peace and quiet was not strictly followed in this case but the evidence was admitted without objection.

ceased came in the club shortly before midnight and had a pistol partially concealed in his pocket. The deceased walked over to the table occupied by appellant and Crawford and just stared at them with his hand on the pistol inside his pocket. No word was spoken by anyone present. While the deceased was standing over them, appellant took his pistol out and passed it under the table to Crawford. The owner of the club saw this movement and came to the table and told them he was not going to put up with any trouble in his place. The deceased then walked to the back of the club. About this time some boy came in the club and told appellant and Crawford they were wanted outside and they left. While they were talking to appellant's sister and his girlfriend near a parked car, they saw the deceased come out of a side door to the club and start talking to two men, but the deceased kept his eyes peeled in their direction. While appellant and Crawford were standing side by side, appellant claims the deceased had his hand on his pistol and he saw him make a sudden turn in his direction and was pulling his pistol. Appellant then took the pistol from Crawford and fired three times in rapid succession. After the shooting, everyone scattered. Appellant, Crawford, and the two girls left Gadsden and spent the night in a motel in Attalla, Alabama.

Appellant was arrested on a murder charge and was given the *Miranda* rights and warnings at the time of his arrest. He was carried to the detective room at Police Headquarters and before he was asked any questions, he was once again given the *Miranda* rights and warnings. He told the officers that he understood his rights and was willing to make a statement. He signed the following waiver form:

## "WAIVER OF COUNSEL BY DEFENDANT IN CUSTODY

"I, Levern Payne, have been informed by the undersigned law enforcement officers, prior to being questioned by them, that I am suspected of the offense of 1st Degree Murder in Etowah County, Alabama, on the 22nd day of July 1973, and have been informed by them of my rights as follows:

"1. That I may remain silent and do not have to make any statement at all.

"2. That any statement which I might make may be used against me in court.

"3. That I have a right to consult with an attorney before making any statement and to have such attorney present with me while I am making a statement.

"4. That if I do not have enough money to employ an attorney, I have the right to have one appointed by the Court to represent me; to consult with him before making any statement; and to have him present with me while I am making a statement.

"5. That if I request an attorney, no questions will be asked me until an attorney is present to represent me.

"After having my rights explained to me, I freely and voluntarily waive my right to an attorney. I am willing to make a statement to the officers. I fully understand my rights to an attorney and I have (read—had read to me) this Waiver of Counsel and fully understand it. No threats or promises have been made to me to induce me to sign this Waiver of Counsel and to make a statement to the officers.

"This the 23rd day of July, 1973.
"s/ Levern Payne

"All of the rights in the above Waiver of Counsel were read and explained to the above defendant by me and he freely and voluntarily waived his right to an attorney. No threats, promises, tricks, or persuasion were employed by me or anyone in my presence to induce him to waive his rights to an attorney and to make a statement without an attorney. He freely and voluntarily signed the

above Waiver of Counsel in my presence after having (read–had it read).

"Name J. C. Couch
Title Sgt. Detective Division G.P.D.

"Witnessed by:
s/ Sgt. C. R. Beaird
_____"

Appellant then made and signed the following statement:

"Date July 23, 1973 Page No. 1
"STATEMENT OF: Leverne Payne, Age 18, 500 No. 10th St., Gadsden, Ala. DOB: 1–20–55.

"On Sunday night, July 22, 1973, about 11:30 P.M. or something like that, me and Sonny Crawford went down by Leonard's place at 10th and Tuscaloosa. We went in there and sat down and this Robert Morgan went over to the bar and stood up just about to the bar and started looking at Sonny and he had his pistol about half way out of his pocket. I gave Sonny this gun that I had borrowed. It is a .32 left hand Willow, with 4″ barrel, blue steel and brown plastic handles. I passed it to him under the table. My sister, Patricia Ann, and Louise Usher was standing out on the side and called us out. Me and Sonny went out the front door and Robert was standing between two girls and had his hand on his gun and was taking it out of his pocket. He had come out the side door. I told Sonny if you ain't gonna shoot I will, so I grabbed the gun from Sonny and shot three times. Then I ran through a little path between Avenue G and Evans Street. I dropped the pistol and kept .running. Sonny caught up with me just as I was fixing to enter the path off Avenue G and told me that he thought I had killed the man. I told him I couldn't help it and I started running again. Me and Sonny went to Robert Baker's house in the 11th Street project and couldn't get him up. So after that we saw the two girls that had called us outside and we got in the car and went to Attalla. We stayed at Buck's Motel that night.

"I make this statement of my own free will and accord without any threats or promises of reward.

"s/ Levern Payne
"Witnesses:

s/ Sgt. C. R. Beaird
s/ Sgt. J. C. Couch"

Fred Crawford further testified that the appellant jerked the gun out of his hand and shot the deceased without saying anything. No witness for the defense, except appellant, testified that the deceased did anything by word, act or movement to indicate he intended to pull his pistol and shoot appellant or shoot in his direction. As hereinabove stated, appellant had never seen deceased before the night of the shooting and no words had been exchanged between them during the entire evening. They were not even in close proximity to each other when appellant jerked the pistol out of Crawford's hands and gunned down the deceased. His claim of imminent peril is entirely suspect in the light of all antecedent circumstances leading up to the shooting. His claim of justification is all the more suspect when he took flight from the murder scene and spent the night in a motel in another city. And, too, his voluntary confession shows no semblance of self-defense. Instead of moving toward the deceased just before firing three bullets into his body, all the evidence tends to show he could have walked away from the nightclub unmolested. One who is entitled to an acquittal by reason of self-defense should never flee the shooting scene, but should go to the law officers, surrender his gun, and give the officers a statement as to why it was necessary to act as he did to protect his own life or to protect himself from grevious bodily harm.

The trial judge was most generous and liberal to appellant in his oral charge to the jury in charging on the four degrees of homicide embraced in the indictment. It is certain that the evidence did not war-

rant a charge on manslaughter in the second degree. Moreover, under the evidence in this case there was no justification for the court to charge the jury on assault and battery and simple assault.

The following are excerpts from the oral charge:

"Now, gentlemen, without changing anything that I have said to you about the burden of proof that rests upon the State of Alabama, the burden of proof rests upon the State of Alabama. The defendant has no burden at all in reference to the proof that is necessary as I have stated to you, to overcome—I mean the defendant has no burden of proof to overcome any evidence that the State may have offered. The defendant has no burden of proving the State's case at all.

"I have said to you that the defendant has plead the general issue, general denial, and also self defense. And you would consider the defendant's plea of self defense only—you wouldn't even come to it unless you are satisfied beyond a reasonable doubt and to a moral certainty of the guilt of the defendant. You won't even consider it, you wouldn't even come to it, because you would already have a verdict of not guilty. Or you should arrive at a verdict of not guilty, if that were your judgment.

"In the event that you are satisfied beyond a reasonable doubt that the State has met the burden of proof that's specified against it, and should come to consider the defendant's pleas of not guilty by reason of self defense, then the defendant must reasonably convince you of the truth of every material averment or allegation of the plea of self defense as the court has specified to you.

"Gentlemen, there is one more point of law that I have overlooked, which is, I have said to you that you must—the burden of proof is upon the State to satisfy you beyond a reasonable doubt and to a moral certainty of the guilt of this defendant of one of those offenses before you can find him guilty, beyond a reasonable doubt or to a moral certainty. I have already defined a reasonable doubt for you. And added to that is the statement 'and to a moral certainty.'"

■ The court was in error in charging the jury that "the defendant must reasonably convince you of the truth of every material averment or allegation of the plea of self defense."

■ There is no burden of proof on a defendant in a homicide prosecution except as may be germane under a special plea of not guilty by reason of insanity. Title 15, Section 422, Code of Alabama 1940; Hall v. State, 49 Ala.App. 381, 272 So.2d 590; Lester v. State, 270 Ala. 631, 121 So.2d 110.

The rule is well stated in Ex parte Williams, 213 Ala. 121, 104 So. 282, as follows:

"The defendant's burden in this behalf has often been loosely referred to as the burden of proving self-defense, and sometimes as the burden of reasonably satisfying the jury of the existence of the two elements above referred to. But the actual burden is not a burden of proof, in the ordinary sense of the phrase, to establish an issue to the reasonable satisfaction of the jury, but a burden merely of offering enough evidence tending to show these two elements to generate, in connection with all the other evidence, a reasonable doubt of defendant's guilt of the unlawful killing charged. Henson v. State, 112 Ala. 41, 21 So. 79; McGhee v. State, 178 Ala. 4, 11, 59 So. 573; Roberson v. State, 183 Ala. 43, 58, 62 So. 837; Ragsdale v. State, 134 Ala. 24, 35, 36, 32 So. 674; Baker v. State, 19 Ala.App. 432, 98 So. 213, affirmed 210 Ala. 374, 98 So. 215; Perry v. State, 211 Ala. 458, 100 So. 842."

Appellant failed to reserve a proper exception to that portion of the oral charge relating to the burden resting on him. Hall v. State, supra.

Appellant urges a reversal because of the action of the trial court in refusing the following written charges:

"Charge No. 7. I charge you, gentlemen of the jury, that the defendant is not under a duty of proving self defense, but on the contrary he may take advantage of the proof the state offers and he may be acquitted under such evidence."

"Charge No. 9. Gentlemen of the jury, I charge you that under a plea of self defense, the burden of proof is on the state to show that the difficulty was brought about by the fault of the accused."

"Charge No. 10. Gentlemen of the jury, I charge you that in a murder prosecution where the defendant claims self defense, the state has the burden to show that the defendant was not free from fault in bringing on the difficulty."

■ In Baker v. State, 19 Ala.App. 432, 98 So. 213, certiorari denied, 210 Ala. 374, 98 So. 215, the law governing the burden of proof and the rule relating to self defense is stated to be:

"The burden is on the state to convince the jury by the evidence, beyond a reasonable doubt, that the defendant is guilty as charged, and this burden is never discharged until after a consideration of the whole evidence, including the evidence offered by defendant as to self-defense, and the jury is so convinced.

"The only burden resting on the defendant with regard to his plea of self-defense is that the defendant must offer such evidence in support of such plea as will, when considered with the whole evidence, generate in the minds of the jury a reasonable doubt of his guilt."

■ The court's oral charge correctly and thoroughly stated the principles of law applicable to this homicide prosecution except as to the excerpt above alluded to and to which exceptions were not specifically and properly reserved.

The refused charges are confusing and misleading when measured by Baker v. State, supra, and Sterrett v. State, 31 Ala. App. 161, 13 So.2d 776; and Pate v. State, 42 Ala.App. 334, 163 So.2d 645. Hence, there was no error in their refusal.

The case is due to be affirmed and it is so ordered.

Affirmed.

CATES, P. J., and TYSON and De-CARLO, JJ., concur.