Robert Twyman, Jr., was indicted for attempted assault in the first degree, in violation of §§ 13A-6-20 and 13A-4-2, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment." The trial judge sentenced the appellant to twenty years and one day in the state penitentiary as a habitual felony offender.
During the early morning hours of April 18, 1988, the appellant telephoned Fred Cook at his home. The appellant told Cook that he wanted some money ($10 or $15) that he claimed Cook owed him. Cook explained that he would pay the appellant "tomorrow," since it was so late. Cook testified that the appellant then began cursing and told him that he wanted his money "now." (R. 13-14.)
After hanging up the phone, the appellant got into his car and proceeded in the direction of Cook's home. He passed by Joe Bob's Food Store in Sylacauga, Alabama, and saw two men, Theotis Williams and Willie Lewis Leonard, standing in front of the store. He stopped to ask them what they were doing there. The two men told the appellant that they came to Sylacauga with a friend and that they were trying to catch a ride back to Alex City, Alabama. The appellant volunteered to take them back to Alex City, but he said he had to make a stop, "because he [was] on a mission." (R. 37.) *Page 1217 
With Williams and Leonard in the car, the appellant went to Cook's home. At about 2:00 to 2:30 a.m., Cook heard someone knock on his door. Believing that the appellant Twyman was at the door, he took his Smith Wesson .44 magnum pistol from underneath his bed and carried it with him. Cook testified that he slid the gun underneath the coffee table.
Cook then went to the front door. He reminded the appellant that he (Cook) had told him on the telephone not to come to his house at such a late hour and that he would pay him the money the next day. Cook claimed that the appellant told him it was time to get paid and said, "You're going to pay somebody if you ain't going to pay me." (R. 16.) Cook then told appellant to leave. The appellant turned and got into his car.
The appellant cranked the car and turned on the headlights. Cook noticed that two other people were in the car with the appellant. The appellant stopped his car and shouted to Cook that he was stuck. The appellant shouted for Cook to come help him. Cook refused and continued to stand inside the doorway of his house.
Cook testified that he saw the appellant reach down in his car, whereby Cook retrieved his gun from underneath the coffee table. In this regard, Cook stated:
 "A He slammed it in park, put his lights on bright, and put one foot on the ground and one in the door of the car and went to reaching in the car. I said, 'Man, what are you doing?' I just kept hollering. I said, 'Don't do it. Don't do it.' He just didn't — He just didn't hear me, and he picked up, and I could see it, a rifle. He was bringing it out of his car and I kept hollering shouting, 'Don't do it. Don't do it. Just leave it. Don't do it.'
"Q Then what happened?
 "A He got it and wheeled it around to me. When he wheeled it around at me, I wasn't going to look down the barrel, and I just went to shooting — we went to shooting. I hit the floor. I ran out the back, and I don't know what happened. I just know a couple of shots went off. I was outside hiding behind a tree. He was still shooting telling me to come out." (R. 17.)
Within minutes after the shooting began, the police arrived. After talking with both Cook and the appellant, the appellant was placed under arrest. During the process, the appellant became unruly and cursed the officers. He was charged with disorderly conduct. He was later indicted for the attempted assault charge on which he was ultimately convicted and now appeals.
 I
The appellant first contends that he was twice put in jeopardy in violation of Article I, § 9, Constitution of Alabama (1901). As a result, the appellant claims that his conviction should be set aside.
The appellant argued prior to trial and in his motion for a new trial that a jury was struck and sworn in April 1988. Thus, the appellant argues that the dismissal of that jury barred his subsequent trial and conviction in May 1988.
We find no merit in the appellant's argument. As the trial judge stated in his "Order Overruling Motion for a New Trial," the only testimony offered to support the claim that the April jury was sworn was the testimony of the appellant. The State offered overwhelming evidence to the contrary.
The appellant's appointed trial counsel, Bill Denson, raised a pre-trial claim of double jeopardy on behalf of the appellant. Denson stated the appellant's claim, but he explained to the trial judge that he recalled striking a jury before Judge Terry Fielding the prior month. According to Denson and the district attorney, after the jury was struck, it was discovered that two crucial witnesses, Williams and Leonard, could not be located. Both sides wished to call these witnesses. Therefore, the jury, without being sworn, was released until the witnesses could be located.
Additionally, a hearing was held on the appellant's motion for a new trial. At the hearing, the appellant's newly-appointed counsel, Steven Adcock, stated that the appellant *Page 1218 
requested him to subpoena the members of the April jury. Adcock stated that he spoke with some of these people and decided against calling them to testify, because he discovered that they would not be helpful to his client's position.
Moreover, at the same hearing, Judge Fielding testified that he recalled striking a jury in this cause, but he did not remember swearing in the jury. He recalled that the trial was continued until May at the request of both parties. Also, the court reporter was called to read her transcript from the April hearing. The transcript revealed that the first jury was struckbut not sworn.
Therefore, we find no merit to this argument, and thus we find no double jeopardy violation.
 II
The appellant also claims that he was denied his right to a speedy trial in violation of Article I, § 6, Constitution of Alabama (1901), and the Sixth and Fourteenth Amendments of the United States Constitution.
The relevant events occurred as follows:
April 18, 1988 Fred Cook filed a complaint against the appellant. A warrant was issued for the appellant's arrest for attempted assault in the first degree. The warrant was served on the appellant in the Sylacauga Jail, where he was being held for disorderly conduct.
June 14, 1988 The appellant was declared indigent, and the Honorable William T. Denson was appointed to represent him.
July 11, 1988 The appellant filed a pro se motion for a fast and speedy trial, alleging a violation of the Uniform Mandatory Disposition of Detainers Act (UMDDA). Ala. Code § 15-9-80 et seq. (1975). The motion was filed in response to a detainer placed on this appellant, who was then incarcerated, by the Sylacauga Police Department.
July 19, 1988 The appellant filed a second pro se
motion for a speedy trial, alleging a violation of the UMDDA and Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).
September 9, 1988 The appellant filed a third pro se
motion for a speedy trial, moving to expeditiously dissolve the detainer against him.
October 24, 1988 The appellant filed a pro se motion for dismissal, alleging violation of UMDDA.
March 15, 1989 The November 1988 Term of the Talladega County, Alabama, grand jury entered an indictment (true bill) against the appellant for attempted assault in the first degree.
April 24, 1989 The appellant was scheduled to be tried. The case was continued, pending location of two witnesses.
May 17, 1989 The appellant was tried and found guilty of attempted assault in the first degree.
May 18, 1989 The appellant was sentenced to twenty years and one day as an habitual felony offender.
June 8, 1989 The appellant filed a pro se motion for a new trial, alleging, inter alia, that he was denied his right to a speedy trial.
August 1, 1989 A hearing was heard on this appellant's motion for a new trial.
September 12, 1989 The Honorable William C. Sullivan, Circuit Judge, entered a written order, denying the appellant's motion for a new trial.
Sometime between April 18 and June 14, 1988, the appellant pleaded guilty to two counts of felony possession of marijuana, which were unrelated to the case at bar. He was sentenced to two five-year prison terms to run concurrently. He remained incarcerated on these charges during the pendency of the cause sub judice. A detainer was placed on this appellant at some time before June 14, 1988, when he was appointed counsel.
Between July 11, 1988, and October 24, 1988, the appellant filed three motions for a speedy trial and one motion for dismissal, claiming violation of his right to a speedy trial. All four motions claimed a violation of UMDDA. The second motion for a speedy trial, filed on July 19, 1988, additionally claimed that the appellant was denied *Page 1219 
his right to a speedy trial against the mandates of Smith v.Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).
The appellant's claim of a speedy trial violation under UMDDA must fail. This court has previously stated that the UMDDA statute is not applicable to intra state detainers. Rather, the statute is designed to provide protection to prisoners held by one jurisdiction and charged with a crime by another jurisdiction (i.e., between states or between a state and the federal government). Morning v. State, 416 So.2d 780, 781
(Ala.Cr.App. 1982).
Contrarily, the appellant's claim that he was unreasonably detained and prejudiced, even though he was a prisoner in the state penitentiary at the time of his indictment and trial, does present a reviewable issue for this court per the United States Supreme Court's decision in Smith v. Hooey.
We note initially that Smith v. Hooey, 393 U.S. at 378,89 S.Ct. at 577, 21 L.Ed.2d at 611, like UMDDA, applies only where an accused is charged in one jurisdiction and detained by another jurisdiction. This court, however, has previously addressed Smith v. Hooey in an intra state detainer situation.Aaron v. State, 497 So.2d 603, 604 (Ala.Cr.App. 1986) (addressing whether a habeas corpus petition was a proper mode of challenging an intrastate detainer).
In addressing a speedy trial issue, there are four factors which must be balanced to determine if an accused'sSixth Amendment right to a speedy trial has been violated. U.S. Const. Amend. VI. These factors are: (A) length of delay; (B) reason for delay; (C) the appellant's assertion of that right; and (D) prejudice to the appellant because of the delay.Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192,33 L.Ed.2d 101, 117 (1972).
We find that the length of delay — the first Barker factor — was not unreasonable. Therefore, we are not required to inquire into the remaining factors. Barker, 407 U.S. at 530-31,92 S.Ct. at 2192, 33 L.Ed.2d at 117.
In Smith v. State, 469 So.2d 1334 (Ala.Cr.App.), cert.denied, 469 So.2d 1334 (Ala. 1985), we held that a ninety-day delay from the time of indictment to the time of trial was not unreasonable, even though the appellant was incarcerated for seven and one-half months before trial.
In the case sub judice, the appellant was serving a prison term on unrelated charges. He was incarcerated for approximately thirteen months before being tried. But he was indicted on March 15, 1988, and tried on May 17, 1989. Furthermore, almost half of this two month delay — between indictment and trial — was "tolled" because of the unavailability of two key witnesses. Wade v. State,381 So.2d 1057, 1060 (Ala.Cr.App.), cert. denied, 381 So.2d 1062 (Ala. 1980).
The one-month delay in the present case is less prejudicial than the ninety-day delay in Smith. Thus, the delay in the case at bar was not unreasonable. The appellant's right to a speedy trial was not violated.
 III
The appellant next contends that the evidence was insufficient to sustain his conviction of attempted assault in the first degree.
"Attempt" is defined in § 13A-4-2(a), Code of Alabama 1975, as follows:
 "A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense."
Thus, to affirm the appellant's conviction, we must find that the jury could reasonably and fairly infer beyond a reasonable doubt that the appellant performed an overt act, with intent, to assault the alleged victim, i.e., Cook.
Assault in the first degree is set out in § 13A-6-20, Code of Alabama 1975, as follows:
 "(a) A person commits the crime of assault in the first degree if:
 (1) With intent to cause serious physical injury to another person, he causes serious physical injury to any person *Page 1220 
by means of a deadly weapon or a dangerous instrument. . . ."
Combining these two, the facts and evidence presented at trial must lend themselves to the reasonable conclusion that the appellant intended to cause serious physical harm to Cook by performing some overt act with a deadly weapon toward that end.
The record clearly reveals that the appellant fired a .30/30 rifle several times into Cook's home. Leonard and Williams, the two men who were picked up at Joe Bob's Food Store in Sylacauga, Alabama, by the appellant before proceeding to Cook's home, testified that they saw a knife lying in the back seat of the appellant's car. They stated that the appellant offered to take them home, but first he had to make a stop, "because he [was] on a mission." (R. 37.) Both men testified that Cook and the appellant argued over some money at Cook's front door, while they stayed in the car. Both men also stated that the appellant returned to his car, exchanged words with Cook again, and then reached into his car and retrieved the rifle. They heard Cook shout, "Don't do it! Don't do it!" (R. 32, 41.) Leonard and Williams took off running into the woods. They heard gunshots as they were running, Williams was struck in the arm with a stray bullet.
Cook testified that the appellant came to his house around 2:00 to 2:30 a.m. on April 18, 1988. The appellant had telephoned him about forty-five minutes earlier. The appellant asked Cook for some money which was owed the appellant. Cook told the appellant he would pay him the next day, and he told the appellant not to come to his house.
The appellant came to Cook's house anyway. He knocked on Cook's door. Cook said he carried his .44 magnum pistol with him. He and the appellant began to argue at the front door. Cook told him that he would pay him the next day. Cook then testified that the appellant retorted: "You're going to pay somebody if you ain't going to pay me. You're going to pay somebody." (R. 16.)
The appellant then returned to his car and started to back up. He stepped out of the car and shouted to Cook that he was stuck. He asked Cook to come help him. Cook refused, whereby the appellant reached into his car and pulled out a rifle and pointed it at Cook. As the appellant was getting the gun, Cook shouted, "Don't do it. Don't do it." (R. 17.) When he pointed the gun at Cook, Cook fired his pistol at the appellant. The two exchanged gunfire, Cook firing two or three times and the appellant firing five or six times.
Cook also stated that his stepson, who was asleep in his bed when the shooting started, was nicked in the arm, possibly by a bullet or shrapnel from a bullet. Cook stated that after the shooting several holes were found in the outer and inner walls of his house which were not there before the shooting incident.
Officers Mark Holmes and Dusty Lynn Zook of the Sylacauga Police Department testified that they responded to a call at Cook's residence. Upon approaching, Officer Zook testified that she heard gun fire. The officers stated that Cook was at the front of his house and the appellant was in his car when they arrived. A spent .44 magnum casing was found on Cook's front porch. Several spent and unfired .30/30 casings and rounds of ammunition were found in and around the appellant's car. A .30/30 rifle was found in the bushes nearby. Officer Zook also testified that there were several bullet holes in the walls of Cook's house.
The appellant testified that Cook fired at him first when he (the appellant) started walking back toward Cook's house. He admits, however, that he took his gun out of his car before Cook fired. The appellant stated he pulled the trigger of the rifle, but he did not shoot at Cook. In short, the appellant claims he did not intend to harm Cook. He stated: "I didn't have no intent to hurt no one. I'm a non-violent person. If I tryed (sic) to hurt him I would have hurt him." (R. 95.)
As we recently espoused in Rothchild v. State, 558 So.2d 981
(Ala.Cr.App. 1989), *Page 1221 
 "When an accused is convicted by a unanimous vote of a petit jury, the verdict comes to us with a presumption of correctness. It is not the function of this court to reweigh the evidence on appeal. Additionally, we will review the evidence in the light most favorable to the state. Cumbo v. State,368 So.2d 871 (Ala.Cr.App. 1978), cert. denied,368 So.2d 877 (Ala. 1979).
 "Our view is limited to the issue of whether a jury could by fair inference find the appellant guilty beyond a reasonable doubt based on legal evidence presented at trial. Howell v. State,431 So.2d 1326, 1328 (Ala.Cr.App. 1982), rev'd on othergrounds, 431 So.2d 1328 (Ala. 1983); Crumpton v.State, 402 So.2d 1081, 1985 (Ala.Cr.App.), cert.denied, 402 So.2d 1088 (Ala. 1981); Nobis v. State,401 So.2d 191, 198 (Ala.Cr.App.), cert. denied,401 So.2d 204 (Ala. 1981)."
There is no doubt that the jury could have found that the appellant committed an overt act with a deadly weapon when he fired a .30/30 rifle into the occupied home of Cook. The only question remaining is whether the requisite intent existed — i.e., whether the appellant intended to cause serious physical harm by firing into Cook's house.
We have previously stated that "[a]n intent to injure is an essential element of the crime of assault." Stoutmire v. State,358 So.2d 508, 512 (Ala.Cr.App. 1978); Hollingsworth v. State,366 So.2d 326, 331 (Ala.Cr.App. 1978), cert. denied,366 So.2d 333 (Ala. 1979). Furthermore, intent
 "may be presumed from the act of using a deadly weapon unless circumstances negate this presumption. Hall [v. State, 49 Ala. App. 381, 272 So.2d 590 (1973)]; Shiflett v. State, 262 Ala. 337, 78 So.2d 805 (1955). . . . Where one assaults another by the use of a deadly weapon, the law will infer from the fact that he designed to accomplish the probable and natural results of his act, in the absence of proof to the contrary. Hall, supra."
Snipes v. State, 364 So.2d 424, 426 (Ala.Cr.App. 1978) (assault with intent to murder).
Therefore, the jury could reasonably and fairly infer from the facts and circumstances of this case that the appellant intended to cause harm to Cook. The State proved beyond a reasonable doubt that the appellant attempted to assault Cook to the degree with which he was charged and convicted.
 IV
Lastly, the appellant claims that he was denied the effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution.
On June 14, 1988, William T. Denson, an attorney in Talladega County, Alabama, was appointed to represent the appellant in this case. Between July and October of 1988, the appellant filed several pro se motions primarily challenging his right to a speedy trial. (See Part II of this opinion.)
The appellant was ultimately tried on May 17, 1989. During the trial, Denson advised the trial judge that the appellant wished to make a pro se oral motion to the court. The trial judge, after having the jury step outside of the courtroom, heard the appellant's motion. The appellant stated that, during the ten-month period that Denson was appointed to represent him, he only spoke to Denson the previous month. He also claimed that his family had some evidence that would prove that Cook fired at him first and Denson had failed to locate the evidence. He complained that Denson should have subpoenaed Cook's stepson, who was supposedly hit by a stray bullet.[1] He concluded: "All I'm saying is that I'm not getting a good defense here." (R. 46.)
After the appellant completed his list of complaints, the trial judge responded as follows:
 "THE COURT: I'm giving you just as fast a trial as the Good Lord will let me, fellow, and I'm just about fed up with you and your motions, and you've got a *Page 1222 
lawyer that the State appointed for you. You're not charged with shooting Fred Cook's son, you're charged with the charge that you are charged with. Now go over there and sit down and let your lawyer handle your case. Do you want to discharge your lawyer and handle your own case?
"THE DEFENDANT: I want another attorney appointed.
 "THE COURT: You aren't getting one in the middle of a trial. Bring the jury back and let's go.
 "MR. DENSON: Judge, may I ask you one thing with him on the record.
 "Mr. Twyman, the Judge asked if you wanted me discharged, and if you feel like I'm not doing the job, you ask the Court to discharge me and you proceed yourself. Do you want to do that?
 "THE DEFENDANT: No. I want another attorney appointed to me.
 "MR. DENSON: The Judge isn't going to do that, I don't think. (R. 46-47.)
At the end of the trial, the trial judge told the appellant that he would leave Denson as his appointed counsel until he hired another attorney. On May 18, 1989, the day following trial, a sentencing hearing was held. A substitute attorney appeared for Denson, at Denson's request, and with the approval of the trial judge.
On June 8, 1988, the appellant filed a pro se motion for a new trial, alleging, inter alia, ineffective assistance of counsel. On June 13, 1988, the appellant filed a pro se motion to dismiss his attorney.
The motion was granted, and Steven Adcock was appointed to represent the appellant. The appellant thereafter filed a motion to dismiss Adcock as his attorney. At the hearing on the motion for a new trial, Adcock reminded the trial judge of the motion to dismiss him. The following colloquy then occurred:
 "THE COURT: Mr. Twyman, it was your request that we relive [sic] Mr. Denson and appointed Mr. Adcock, and we can't just keep on appointing you lawyers at your request. Mr. Adcock is here ready and available to go through this motion and also prosecute your appeal in the event the motion is not granted, so what are your desires in that regard?
 "MR. TWYMAN: Your Honor, like you said, I don't really have no choice. You're not going to keep appointing me an attorney, so I'll have to go with Mr. Adcock.
 "THE COURT: All right. That will be fine." (R. 123-24.)
Apparently, however, Adcock was likewise dismissed as the appellant's counsel, because a third lawyer filed the brief on appeal for the appellant.
On September 12, 1989, the trial judge entered an order denying the appellant's motion for a mistrial and finding no ineffective assistance of counsel. The trial judge stated that Denson was an experienced and able criminal trial attorney. The trial judge also stated: "The Court has found it not only customary, but the general rule for convicted defendants to disagree with the trial tactics and decision of defense attorneys." (R. 80.)
As the United States Supreme Court stated in Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984), an appellant who challenges the effectiveness of his trial counsel must satisfy both elements of a two-pronged test. First, he must prove that "counsel's representation fell below an objective standard of reasonableness." Second, he must prove that, because of his counsel's ineffectiveness, he was prejudiced at trial. Ex parte Lawley, 512 So.2d 1370, 1372
(Ala. 1987). To prove prejudice, the appellant must satisfy the heavy burden of proving that the outcome of the trial would have been different. Lawley, 512 So.2d at 1372. See also Exparte Daniel, 459 So.2d 948 (Ala. 1984); Ex parte Baldwin,456 So.2d 129 (Ala. 1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727,86 L.Ed.2d 300 (1985).
On appeal, at trial, and in his motion for new trial, the appellant alleged several reasons why he felt his counsel, Denson, failed to properly represent him (some of which have heretofore been briefly mentioned). First, he claims that he wrote at least five letters to Denson, none of which was answered by Denson. He claims Denson *Page 1223 
did not answer most of his phone calls. Our review of the record fails to reveal copies of any such alleged correspondence addressed to Denson. Moreover, there is no proof that this alleged conduct fell below the objective standard.Strickland; Lawley. Moreover, such a showing would not constitute per se inadequate representation. Watson v. State,439 So.2d 762, 765 (Ala.Car.App.), cert. denied, 439 So.2d 762
(Ala. 1983).
Second, the appellant claims that Denson kept persuading him to plead guilty and failed to pursue any defense. Again, the record fails to substantiate the appellant's claim. The trial judge instructed the jury on self-defense. Additionally, Denson's questions at trial were aimed at revealing that Cook fired the first shot. The testimony of Cook himself and the testimonies of Williams and Leonard revealed this to be a real possibility.
Third, the appellant claims that his attorney should have moved for a dismissal of the case against him after the first trial was continued because of a potential double jeopardy violation. This issue has previously been resolved (see part I of this opinion). Clearly, Denson was of the opinion that the first jury was never sworn in, and thus there was no double jeopardy violation. See Murphy v. State, 444 So.2d 897
(Ala.Cr.App. 1984).
Fourth, the appellant claims that Denson failed to disclose the real basis of the argument between him and Cook. This claim is totally without merit. The appellant was asked twice by Denson and once by the district attorney about the substance of the argument. On all three occasions, the appellant stated that the argument was over ten dollars and "something else." (R. 90, 91, 98.) It was he and not his attorney who failed to reveal the whole story.
Fifth, the appellant argues that Denson failed to retrieve a pair of pants from his family. The appellant claims that the pants had a bullet hole in the leg, which would prove that Cook fired first. We fail to see how a pair of pants with a bullet hole in them would prove who fired first, especially since Cook admitted that he might have fired the first shot.
Sixth, the appellant claims that Denson's waiver of closing argument constituted ineffective assistance of counsel. After the State finished its closing arguments, Denson stood and waived his final argument. Denson stated that his so doing precluded the State from presenting further arguments. Denson asked for a mistrial if the trial judge allowed the State to argue further. The judge overruled the motion, whereby the State stood and concluded its closing argument. (R. 108.)
Per our decision in Behel v. State, 405 So.2d 51 (Ala.Cr.App. 1981), waiver of closing arguments, without more, does not constitute ineffective assistance of counsel. As we stated inBehel, 405 So.2d at 53:
 "Even if [the appellant's counsel's] failure to make a closing argument is ultimately viewed as a mistake unfavorable to his client, that alone is not sufficient to demonstrate inadequate representation. Robinson v. State, Ala. Cr. App., 361 So.2d 1172."
Seventh, the appellant claims that Denson's failure to appear at the sentencing hearing constitutes ineffectiveness of counsel. The record reveals that another attorney showed up at the hearing on behalf of and at the request of Denson. The attorney advised the trial judge of this fact. The trial judge apparently was satisfied with the replacement's representation. Furthermore, the appellant has offered no evidence whatsoever that he was not afforded adequate representation at the sentencing hearing.
We, thus, hold, as did the trial judge, that the appellant was afforded effective and competent representation.
For the reasons stated herein, the decision of the trial court is due to be, and the same is hereby, affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, J., in result only.
[1] The State, later in the trial, attempted to introduce photographs depicting a minor injury to Cook's stepson. Denson objected, arguing that the testimony of the stepson was the best evidence, and the trial judge sustained. *Page 1224