Darryl Struggs was charged with rape, tried by a jury in Pike County, Alabama, found guilty and sentenced to fifteen years imprisonment.
On July 7, 1977, at approximately 9 o'clock in the evening, the victim saw the appellant, Darryl Struggs, at the "schoolhouse" in Brundidge, Alabama. She stated that, at the time, she was on her way to the tennis courts to find her sister and baby and that the appellant called to her and then grabbed her by the arm. According to the victim, the appellant was sitting on the driver's side of his car and had reached through the window on the passenger's side and grabbed her arm. She stated that, because she was afraid of him, she got into his car.
The victim testified that Struggs then drove her to a wooded area and parked. The appellant told her to kiss him and, when she refused, he "started hitting [her] in [her] back and . . . face." She explained that she held her mouth closed so that Struggs could not kiss her, and, after he hit her, he told her to get into the back seat of the car. The appellant then started "pulling [her] clothes off. . . ." He first pulled her "top off" over her head and then "jerked my shorts and a button popped off, and after he jerked my shorts off, he took my pants down."
The victim said she was told to lie down in the back seat and the appellant then held her "down by [her] wrists" and had intercourse with her. She stated that when she screamed he put his "hand over [her] mouth." Further, she said that, after having intercourse in the back seat, the appellant told her to get out of the car, and he again had intercourse with her. She testified that she was then told to put her clothes on and was driven to a place near her home, where the appellant "put me off between Linda Terry's and Miss Annie B. Hollis's house."
According to the victim, she did not go to her home because she was "too scared." She said that, instead, she went back to the school looking for her boy friend, and that, after talking with him they then went to her house where she told her mother and her mother called the police. Thereafter, the victim went to the police station, made a statement and was then taken to the hospital where she was examined by a doctor.
According to the victim's estimate, "about fifteen minutes" had elapsed between the time she left the appellant's car and the time that she arrived home. She stated that she "did not want" nor did she at anytime consent to the intercourse with the appellant and also stated that she was "scared of him."
The testimony of the doctor who examined her indicated that there was "no evidence . . . of trauma . . . bruises . . . scrapes . . . tenderness [or] tears of tissue." He did say that a sample was taken from the vaginal area and submitted to the laboratory, but he did not testify to the results of any tests that were conducted. *Page 51 
Officer Reeves, of the Pike County Sheriff's Department, testified that he interviewed the appellant on the evening of July 7, 1977, and, after advising him of his rights, took a statement from him. Reeves said that he also took a statement from the victim on that evening. Officer Reeves stated that he had received written consent from the appellant to search his car and that, during the search, he found a button in the backseat which was later shown to have come from the shorts worn by the victim.
The defendant took the stand in his own behalf and stated that when he first asked the victim to go for a ride with him she stated that she was "scared" of him but that later she got into the car. He admitted having intercourse with the victim in the backseat of the car but said that he did not take her clothes off. He said that he had intercourse with her only once and stated that she told him "she hadn't took her birth control pill" and "she didn't want to have another baby." Further, he stated that she also told him that she did not want her boy friend to "find out."
The appellant testified that, after having intercourse, he drove her back to the housing project where she lived. He denied grabbing her arm, threatening her or hitting her. He also denied putting his "forearm in her mouth," and stated that during intercourse he did not "hold her hands" nor did she hit, slap, kick or scratch him during the act.
During cross-examination, he admitted that, after the victim got into the car, she started crying, and stated that, just prior to the act, she told him to "go on and get it over with so she could go find her baby." Further, he said that he had known the victim all of his life but had never dated her.
 I
Unlawful carnal knowledge of a woman by a man forcibly and against her will is rape. Thomas v. State, 53 Ala. App. 232,298 So.2d 652. However, the force required to constitute the offense need not be actual and may be constructive or implied.Shepherd v. State, 135 Ala. 9, 33 So. 266; McQuirk v. State,84 Ala. 435, 4 So. 775.
Cole v. State, 19 Ala. App. 360, 97 So. 891 states:
 "The law does not require that the degree of force used must be such as to place the woman under the reasonable apprehension of death, or bodily harm, as to overpower her will. The offense is complete if the female is under such duress as that the act is accomplished against her consent."
The appellant, in the case at bar, had sexual intercourse with the victim against her consent and by force. Although there was no weapon used and no evidence of any bruises, scratches or injury to the victim, there was testimony to the effect that she was "scared" of the appellant and that the intercourse occurred after she had been struck in the face and on the back. Under these circumstances, it is our judgment that the force used was sufficient and that the consummation of the unlawful intercourse was rape.
Under the evidence recited above, we hold that the evidence was sufficient to present a jury question as to the guilt or innocence of the defendant on the charge of rape. Thomas v.State, supra. The conflict in the testimony at trial presented a question for the jury. Pugh v. State, 51 Ala. App. 164,283 So.2d 616; Waters v. State, 55 Ala. App. 646, 318 So.2d 342;Miller v. State, 38 Ala. App. 593, 90 So.2d 166.
 II
The appellant, in his brief, has challenged the constitutionality of Act No. 251, 1977 Alabama Acts, Regular Session. He maintains that this case should be reversed because the trial judge applied the Act when he instructed the attorney for appellant that the court "would not permit any question as to [the victim's] past sexual conduct with other people."
We have searched the record and find that the only reference to the Act in question *Page 52 
occurred after the defense attorney had asked the victim the following question:
 "Q. Did you tell Darryl Struggs that the reason you didn't want to do it was that you didn't take your birth control pill —
 "MR. BARR: [the prosecuting attorney], Your Honor, I am going to object to this and I would ask that we go outside the presence of the jury if Mr. Dickert persists.
"MR. DICKERT: I will be glad to argue it anywhere."
The court, at that point, recessed the jury for ten minutes, and the following occurred:
 "THE COURT: Let the record show that we are out of the presence and hearing of the jury.
 "MR. DICKERT: The complaining witness is in here. I don't know if it matters whether she is here or not.
 "MR. BARR: I am arguing under this act — I think everybody realizes it, because I think the question was too complete and it probably goes through the birth control stage, and you are going into to me, what this act prohibits. You are going into morals, and the sexual background of the victim.
 "MR. DICKERT: I will be glad to state my position when you get through stating yours.
 "THE COURT: Before you state your position, let me read it into the record, of course, so you will know where we are — I am reading from. Subsection `B' of Section 25, 251, Regular Session, 1977. Of course you are aware it says in any prosecution of a crime, sexual conduct evidence relating to the past sexual behavior of the witness shall be introduced if the Court following the procedure prescribed in paragraph `c' finds that such past sexual behavior directly involved the participation of the accused. And it goes on here —
 "MR. BARR: Your Honor, may I say two things? The State did not request an in camera hearing Second, the birth control pills and any of its ramifications has nothing to do with the past sexual behavior of the witness with the accused and by this statute its not admissible.
 "MR. DICKERT: Your Honor, I will admit that I did not ask for an in camera outside the presence of the jury because I considered the statement that I asked her about to be a part of the res gestae, a part of the event, itself, which was brought to my attention by a copy of a statement that was made by the defendant in this case to the officers, which I felt would be introduced against my client. And I am merely cross examining her about what happened that day or that night. Now, I don't think that this has anything to do with her past sexual performance or whatever she had done in the past. It had to do with what she told him that night.
 "THE COURT: All right. What specifically are you asking her?
 "MR. DICKERT: I asked her if whether or not she made this statement, that she didn't take her birth control pill today, and — I was about to ask her if — part of that statement was that she didn't want another baby and that that was the reason that she gave him that she didn't want to have sex that night. Now, if that requires an in camera hearing out of the presence of the jury, I will be happy for you to — admonish them not to consider that statement that came in and we will have the hearing outside and then — get a ruling.
 "THE COURT: I would like this to be the hearing regardless of whether it got raised before by you or the State. This would be an in camera hearing.
 "Let me ask you this. Without trying to get you to divulge what you are trying to do. Do you anticipate, other than this question, do you anticipate going into the past sexual history at all?
 "MR. DICKERT: Nothing other than what was said — on the occasion. I am not going to parade any witnesses in here to say they have had sex with her. I am not going to ask her about her sexual background, but I am going to ask her about everything that happened that *Page 53 
night and I am going to ask every witness I can get on that stand about everything that was said that night, and if it includes something that would — damage the — state's position, the, I'm sorry, but this defendant is on trial for a very serious offense.
 "MR. BARR: Your Honor, if I might say this, the statement from which Mr. Dickert is taking these statements to ask the witness is the Defendant's statement.
 "And it appears he can ask the defendant about what she said.
 "MR. DICKERT: That's right. I can and I will, but I may not get another chance to ask this witness.
 "MR. BARR: The implications here, Mr. Dickert, you know the theory behind this statute as to prevent the victim from being the one on trial, and it appears to the State that Mr. Dickert is trying to develop a line of thought in the minds of the jury that she is on birth control pills and has a baby and therefore is sexually promiscuous and that's [the] whole theory and purpose of that statute. Unless it involves the accused, it's not going to be put before the Court.
 "MR. DICKERT: Your Honor, I think the purpose of the statute is to keep out bad character testimony about the prosecutrix. Before that statute was passed — the defense could go into the past — could inquire into the general reputation in the community of the complaining witness with respect to her chastity and that's what that act is designed to keep out, and we have not offered anything for that purpose, of attacking her character or chastity. We are offering evidence or asking questions designed to find out what was stated during the time that this sexual act took place.
 "THE COURT: All right. Let me rule. I overrule the State's objection. I will permit — I would permit you to ask any question as to what was said or what occurred or what happened that night. I would not permit any question as to her past sexual conduct with other people, as long as her past sexual conduct is done and comes in under the act and that would be a different matter, between the complaining witness and the defendant. Then that would be when you would request an in camera hearing.
 "MR. DICKERT: That's the way I understood the act, now."
Nowhere else in the record is there any reference to the Act in question. Under the facts presented, this court has nothing to review.
We find that no issue is made to appear from the foregoing portions of the transcript. There is no ruling by the court adverse to the appellant. Without such an adverse ruling, this court has no authority to review the issue raised on appeal in reference to the Act. Frazier v. State, 53 Ala. App. 492,301 So.2d 256.
As the constitutionality of this Act was not questioned below, in the case at bar, we are unable to consider it for the first time on appeal. Weathington v. City of Birmingham,52 Ala. App. 77, 289 So.2d 645, cert. den. 292 Ala. 757,289 So.2d 649.
 III
The appellant complains that it was error for the trial court to charge the jury that "the woman need not resist." No exception was taken to the court's oral charge at its conclusion, and, in fact, defense counsel stated to the court that he was "satisfied" with the oral charge as given.
Exceptions to the court's oral charge must be made in the jury's presence and prior to their deliberations and verdict.Cox v. State, 280 Ala. 318, 193 So.2d 759. In the absence of such an exception, the matter is not presented to this court for review. Loggins v. State, 52 Ala. App. 204, 290 So.2d 665;Passmore v. State, 47 Ala. App. 189, 252 So.2d 115.
 IV
Appellant insists that the trial court at one point erroneously instructed the jury during its oral charge that they should convict him if convinced of his guilt beyond a reasonable doubt. He maintains that the *Page 54 
omission of the words, "from the evidence" implied that the jury might convict him on conjecture.
We have reviewed the court's oral charge and have found the following portions of the charge which, we believe, instruct the jury on this point:
 "Now, when a defendant is placed on trial, charged with the commission of a public offense, the law says that he is presumed to be innocent of the offense. This defendant, as well as any defendant, in this trial or any trial, comes into trial with a presumption of innocence in his favor. And it is a fact which is to be considered as evidence and is not to be disregarded. And this presumption of innocence remains with the defendant during the trial until overthrown by evidence which convinces the jury of the defendant's guilt beyond a reasonable doubt."
[emphasis added]
 ". . . . If, after considering all the evidence in the case, you have an abiding conviction of the truth of the charge, then you are convinced beyond a reasonable doubt and it would be your duty to convict the defendant. The reasonable doubt which entitles an accused to an acquittal is not a mere speculative, vague, fanciful, conjectural doubt, but a reasonably substantial doubt, arising from the evidence and remaining after a careful consideration of the testimony; such as a reasonable, fair minded, and conscientious person would entertain under all the circumstances. You will observe that the State of Alabama is not required to convince you of the defendant's guilt beyond all doubt, but simply beyond all reasonable doubt, and to a moral certainty. [emphasis added.]
 "If, after comparing and considering all the evidence in this case, your minds are left in such a condition that you cannot say that you have an abiding conviction to a moral certainty of the defendant's guilt, then you are not convinced beyond a reasonable doubt and the defendant would be entitled to an acquittal." [emphasis added.]
Later, in the court's instructions to the jury pertaining to their form of the verdict, the court gave the following charge:
 "Now, if ladies and gentlemen, after considering all of the testimony in this case, you are convinced beyond a reasonable doubt and to a moral certainty of the guilt of the defendant of rape, . . . . In other words, if you were convinced from the testimony that this defendant was guilty of the offense of rape, . . If, on the other hand, you do not believe after considering all of the evidence, you are not convinced beyond a reasonable doubt and to a moral certainty that the defendant is guilty of rape, but you are convinced beyond a reasonable doubt and to a moral certainty as to the guilt of the defendant. . . .
 "On the other hand, if after considering all the testimony in the case, you are not convinced beyond a reasonable doubt and to a moral certainty of the guilt of the defendant of rape, nor of assault with intent to rape, . . . ." [emphasis added.]
Finally, the court instructed the jury:
 "On the other hand, ladies and gentlemen, if after considering all of the evidence you are not convinced beyond a reasonable doubt and to a moral certainty of the guilt of the defendant, and you are convinced that this defendant is innocent, then the form of your verdict would be, `We the jury find the defendant not guilty.'" [emphasis added.]
At the conclusion of the above instructions, the defense attorney replied that he was "satisfied" with the court's oral charge.
After reviewing the foregoing portions of the charge to the jury, we are convinced that the point of error insisted on by the appellant was sufficiently covered by the trial court. Further, we again note that no exception was taken to the oral instructions by the defense at trial. See Passmore v. State, supra.
 V
We have also examined the seven written requested charges which were refused *Page 55 
to appellant and find that they were either abstract, affirmative in nature or adequately covered by the court's oral charge. Thus, they were all properly refused by the trial court. Adams v. State, 32 Ala. App. 626, 29 So.2d 148; Flandellv. State, 31 Ala. App. 520, 19 So.2d 401.
Under these facts in this case, it is our judgment that evidence presented was sufficient to convict the appellant of the offense as charged and thus the trial court did not err in denying appellant's motion to exclude the State's evidence or for a new trial.
Therefore, the judgment of conviction by the Pike Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.