AFTER REMAND FROM ALABAMA SUPREME COURT
But for one question left unresolved in our opinion in this case, we would be required, without further opinion, to affirm the judgment of the trial court on authority of Ex parte State
(Re: Davenport v. State), Ala. 426 So.2d 472 (1982).
The question unresolved in our opinion that has been reversed by the Supreme Court of Alabama pertains to the action of one of the jurors in obtaining a definition of rape from a dictionary, while the jury was not sequestered. The conduct of the juror and the ruling of the trial court on the subject are reflected by the transcript as the jurors were being polled upon their return of a verdict finding defendant guilty. We quote the pertinent part of the transcript:
 "THE COURT: Ladies and gentlemen, have you reached a verdict?
"THE FOREMAN: We have, Your Honor.
 "THE COURT: Will the bailiff bring the verdict forward.
"(Handed to the Court).
"THE COURT: Have the defendant to rise.
"(Defendant standing.)
 "THE COURT: `We, the jury, find the Defendant guilty of rape in the First Degree as charged in the indictment.' Each of you answer out. Is this your verdict?
 "(Each juror, upon being asked by the Court, `Is this your verdict?', answered in the affirmative.)
 "THE COURT: Thank you, ladies and gentlemen. I appreciate your service and the patience and the time that you have given to this case. And at this time I am discharging you from any further consideration and you may report back to the Jury Assembly Room for further instructions.
 "MR. DOWNS: Your Honor, prior to the jury leaving could we approach the bench?
"(At the bench.)
 "MR. DOWNS: Your Honor, for the record, I would like to show that yesterday afternoon the jury asked for a dictionary. At that time the Court refused to allow the jury to have one. In view of the fact that the jury was recessed and returned to their homes last night, it is possible that they did, in fact, look up something in the dictionary or use some sort of evidence that was not presented in Court. At this time we feel like that the Defendant would like the opportunity to poll the jury to find out why they wanted the dictionary and if they did, in fact —
 "THE COURT: I'll ask them if they used anything other than the evidence that was presented to them.
 "MR. DOWNS: Would you ask them specifically the dictionary?
 "THE COURT: I don't know what they wanted a dictionary for. I'll just ask them about the evidence.
 "MR. DOWNS: Could you just ask them what they used the dictionary for? It may be something unrelated. You could ask and see.
"(In open court)
 "THE COURT: Ladies and gentlemen, I am going to ask one question and I am *Page 475 
going to poll you again each of you. Did you use a dictionary or any other thing that was not evidence in this case in reaching a decision in this case?
 "(In answer to the above question the first eleven jurors answered in the negative. The twelfth juror answered as follows:)
 "JUROR: I looked at one at home. I didn't bring it with me or nothing.
 "THE COURT: Did it influence you in your decision in this case?
 "JUROR: No. It gave me a little more definition of rape than what you explained to us.
 "MR. DOWNS: Your Honor, at this time we make a motion to — for a mistrial based on the fact that that juror admits that he did use a dictionary.
"THE COURT: Denied.
"MR. STEWART: We except.
 "THE COURT: You may report back to the Jury Assembly Room, ladies and gentlemen, for further instructions.
 "MR. DOWNS: We except to the Court's ruling, Your Honor.
"(Jury excused)."
With commendable zeal and dedication to their respective clients, counsel for the parties have presented a large number of authorities pertaining to the question whether use by jurors of a dictionary, or an encyclopedia or the like, as to the meaning of a word or words involved in a particular case under consideration by the jury requires that the verdict in the case be set aside, upon an appropriate attack by the losing party. We find that none of the authorities cited gives a persuasive answer to the question, as applicable to the facts in the instant case, except Nichols v. Seaboard Coast Line Ry. Co., Ala., 341 So.2d 671 (1977), upon which appellant heavily relies. The author of the splendid opinion therein, as to which there was no dissent, has made an outstanding contribution to the law in Alabama and elsewhere on the subject. In Nichols v.Seaboard, supra, all justices agreed (six in a specially concurring opinion) that it was necessary to reverse the judgment of the trial court by reason of its error in overruling plaintiff's motion for a new trial grounded on the action of some of the jurors in obtaining, between the time of the submission of the case to them for their verdict and the return of a verdict, from a dictionary and from an encyclopedia, definitions relative to the tort "negligence" and defendant's affirmative defense of "contributory negligence," and related legal terms, upon which plaintiff's complaint and defendant's answer were primarily, respectively based. In the opinion, Justice Jones significantly stated at 341 So.2d 674, "We hasten to add, however, as previously noted, our holding is restricted to the particular facts and attending circumstances of the instant case." As explained in detail in that opinion, particularly on pp. 674 and 675, the jury had become confused as to the tort "negligence" and its related terms, as to which it was stated at 341 So.2d 675:
 "The record in this case clearly shows that several jurors became concerned over their confusion of definitions of certain legal terms. The confusion is understandable; the case, while not overly complicated factually, involved the most intricate of legal concepts of tort liability and countervailing defenses. This lack of understanding is no reflection on the accuracy or completeness of the judge's instructions to the jury. What is routine within the professional training and discipline of lawyers and judges is nonetheless novel and outside the common experience of lay jurors. Any credible verdict, reflecting justice among the parties, must of necessity apply the facts as found by the jury to the law of the case, and this application cannot be made where there is confusion and doubt as to the applicable legal concepts.
 "This confusion was communicated to the Court. When the Court declined to assist the jurors to a better understanding of the law applicable to the case, they were left either to proceed in their confusion or to resort to their own initiative to alienate their uncertainties. Given this choice, the jurors can hardly be blamed for looking to their home reference books during *Page 476 
the night recess to clarify in their minds the legal concepts essential to a resolution of the case."
The essential difference between the two opinions in Nichols,supra, the opinion of the Court as expressed by Justice Jones and the specially concurring opinion of the late Justice Bloodworth, is to be found in the specially concurring opinion at 341 So.2d 677 as follows:
 "I do not agree that no prejudice need be shown in this case. I simply say that it is clear here that prejudice has been shown under the facts of this case.
 "Our case law has long required, in the absence of improper act of the prevailing party, that prejudice must be shown. Faust v. Miller, 260 Ala. 665, 72 So.2d 294 (1954)."
For us to reverse the judgment of the trial court for its refusal to grant the defendant a mistrial by reason of what had occurred as to what one of the jurors had read in a dictionary would be in conflict with what was held by all nine justices inNichols v. Seaboard, supra, as hereinafter further explained.
The intricate legal problems involved in a damage suit, in which there is need for a clear understanding of what is meant by negligence, contributory negligence, subsequent negligence, subsequent contributory negligence and their ramifications, constitute stones over which lawyers often stumble. Laymen cannot be expected to do otherwise. On the other hand, the meaning of rape of a female by a male, as proscribed by the common law, which prevailed in Alabama on the subject until the effective date of the Criminal Code of 1975, as well as the meaning of rape in the first degree, as expressly charged in the indictment in this case under § 13A-6-61 (a)(1), which defines the offense as the engagement by a male "in sexual intercourse with a female by forcible compulsion," is so clear and unambiguous that no person intelligent enough to be a juror could err as to the meaning. The meaning was set forth clearly in the court's oral charge as follows:
 "The Defendant in this case is charged with Rape in the 1st Degree. And a male commits the crime of Rape in the 1st Degree if he engages in sexual intercourse with a female and he does so by forcible compulsion. To sustain the charge of Rape in the 1st Degree in this case the State by the evidence must prove beyond a reasonable doubt each of the following elements: That is, that the Defendant, Kenneth Dale Davenport, a male, engaged in sexual intercourse with Theresa Dianne Bland, a female, and that he did so by forcible compulsion."
We see no reasonable basis for any contention that the juror who consulted a dictionary could have been misled thereby to the prejudice of defendant on the issue of whether his intercourse with the alleged victim was by "forcible compulsion," which was the sole issue in the case. We realize that, as the juror indicated, dictionaries will generally include broader definitions of "rape" than that defined by the trial court, as set forth in the indictment and in the pertinent subsection of the Code of 1975. However, such broader definitions would have no tendency to mislead a person as to the meaning of the particular crime for which defendant was charged and convicted.
In commenting on but not deciding the question now being considered, we said in our opinion on original submission that "it is understandable why, in this particular case, the juror would feel the need for a dictionary to inform him as to the meaning of rape." This statement was made by reason of concern as to whether confusion to the prejudice of defendant had been caused by the injection into the case of considerable evidence of deviate sexual intercourse subsequent to the commission of the crime charged against this appellant, which concern has been laid to rest by the opinion of the Supreme Court of Alabama, which we are pleased to follow.
The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur. *Page 477