This appeal is from a judgment of conviction and sentence for robbery in the first degree. The alleged victim was Frank Hicks, and the indictment tracks the language of two sections of Alabama Criminal Code defining the crime as follows:
"§ 13A-8-43
 "(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
 "(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.
". . . .
"§ 13A-8-41
 "(a) A person commits the crime of robbery in the first degree if he violates section 13A-8-43 and he:
 "(1) Is armed with a deadly weapon or dangerous instrument; or
". . . ."
The indictment further alleged the deadly weapon or dangerous instrument with which defendant was armed was "to-wit: a pistol."
Both the alleged victim and the defendant testified profusely on the trial. According to the undisputed testimony, about 1:30 A.M. on March 16, 1982, the alleged victim, Frank Leroy Hicks, who operated a flower shop at 93 Lee Street in the city of Montgomery had gone to the nearby Dutch House Restaurant on Lee Street, where he purchased a "soda," and just after he left the door of the restaurant the defendant, with a pistol in his hand, told Hicks to give him his wallet. Mr. Hicks rushed back inside of the Dutch House and was followed closely by the defendant, pistol in hand. The defendant barely entered the restaurant and then departed in the direction of the Trailways Bus Station. The victim or waitress in the restaurant, or both, called the police as defendant was in the process of leaving the restaurant. The police located the defendant at the Trailways Bus Station, placed him under arrest and transported him to the Police Headquarters. A key was found in the possession of defendant that appeared to be a "locker key." The defendant returned with police investigators to the Trailways Bus Station. The key fit "locker No. 202." Inside the locker there was a loaded black pistol. Also in the locker were a pistol holster and a belt. That the defendant was intoxicated at the time of the incident involved was clearly established by the evidence, but there is some disagreement as to the extent of his intoxication.
One of the issues presented on appeal pertains to the question of the extent of defendant's intoxication. Appellant urges that defendant was so highly intoxicated at the time of his arrest and transportation to police headquarters that the consent there given by him to the police investigators for them to search the locker for which a key was on his person was invalid. Defendant's motion to suppress evidence of the results of that search, the pistol, the holster and the belt, was submitted on the testimony of Police Investigator L.H. Brown, who during cross-examination by defendant's attorney on the motion to suppress, testified:
"Q. So you do concede that he was intoxicated?
"A. Yes, sir.
"Q. Highly intoxicated?
 "A. I would say, yes. He was highly intoxicated, but he was able to understand his rights that night. *Page 1355 
"Q. Oh, you think he was?
"A. Yes, sir.
 "Q. You think he was able to give voluntary consent to search the locker since you said he said go ahead and search him since it did not belong to him?
 "A. I feel like that at that time, Mr. Lewis appeared to me to have a drinking problem and this was a condition which was not too uncommon to him and he functioned in this realm quite a lot.
 "Q. So you are saying that you recognized him as being a person with a drinking problem? An alcoholic?
 "A. He seemed to me to be that type. Yes, sir. Because he was able to function enough to be able to go about his business on the street without falling down and running into buildings and stuff like that which would get him arrested on a public drunkenness charge."
We agree with the conclusion of the trial court that the defendant was not so intoxicated that he could not have given a valid consent to the search of the locker and that his valid consent to such search dispensed with any necessity for a search warrant to preserve defendant's Fourth Amendment right to security against unreasonable search and seizure. Furthermore, we are of the opinion that the exigencies of the circumstances forbade the delay that at that time of night would have been required to obtain a search warrant.
Another issue presented by appellant is based on the trial court's refusal of defendant's requested written charge IV as follows:
 "I charge you ladies and gentlemen of the jury that in your deliberations on the question of Mr. Lewis' guilt or innocence, you may consider the lack of motive to commit the crime charged in arriving at your verdict."
In refusing Charge IV, the court noted that as to it and other charges the charges were "substantially covered in Court's oral charge." We note that in the court's oral charge relative to the necessity that the State must prove by the evidence beyond a reasonable doubt that defendant was guilty, it said:
 ". . . That is a burden the State has of proving to you, that, beyond that doubt for which there is a reason. The lack of evidence can furnish such a reason or lack of a reason for him to do it. Lack of motive, we call it, some time, can generate such a doubt. . . ."
We think that the principle set forth in defendant's requested Charge No. IV was covered by the court's oral charge. Furthermore, the use of "You may consider the lack of motive," instead of "You may consider any lack of motive," tends, at least, to assume that there was a "lack of motive," and for that reason alone the charge should not have been given.
Another contention of appellant is that the trial judge erred in failing to instruct the jury on any lesser included offenses contained within the offense of Robbery in the First Degree. Appellant candidly recognizes the authority of Lidge v. State, Ala.Cr.App., 419 So.2d 610, 613 (1982), cert. denied,419 So.2d 616, which we follow and apply what was held therein to the instant case, that the "proper way to raise the question of the failure of a trial judge to charge on a lesser included offense is by a written requested charge" and that such issue "has not been properly preserved for review" if, as here, the defendant has not submitted "a written requested charge concerning the omitted matter."
As a final contention, appellant urges that the trial judge "erred to the substantial prejudice of the Defendant when he gave confusing instructions to the jury relating to the defense of intoxication as it applied to the offense of Robbery in the First Degree." Appellant directs attention to the fact that in the course of the deliberations of the jury, it was made known to the trial court that the jury desired to ask a question. The transcript shows that before the jury returned to the courtroom to ask the question, the following occurred:
 "THE COURT: The Jury has asked a question: `Does the asking for the wallet *Page 1356 
for identification while waving a pistol constitute robbery?' I am just going to tell them what robbery is again.
 "MR. CARTER: Judge, that is why I was saying the intent element is so vital in this case.
 "THE COURT: Well, I am going to define robbery for them again. (At this time, the Jury returned to the courtroom, where the following was had and done of record.)
 "THE COURT: Ladies and gentlemen, let me thank you for communicating with us in this way. This lets us formulate a response and discuss with the parties what the question is. The question is: `Does asking for the wallet for identification while waving a pistol constitute robbery?' The best way for me to handle this is just to define it for you again and go over the definition as many times as you would like for me to."
The court then proceeded to repeat substantially what it had stated in its oral charge to the jury, which is covered by approximately two transcript pages that ended with the court stating, "I hope I helped you." The transcript shows that immediately following the quoted last sentence of the court, the following occurred:
 "(At this time, the Jury retired to the Jury Room, and the following was had and done of record, outside the presence of the jury.)
"THE COURT: What says the State?
"MR. TRAEGER [Attorney for the State]: Fine.
"MR. CARTER [Defendant's attorney]: Fine."
In fairness to appellant, it should be noted that, notwithstanding the undisputed facts in the case as shown above, appellant stoutly denied in his testimony an intent to rob the alleged victim. His testimony was to the effect that he had had an alcohol problem while he was in military service in Vietnam that brought about an early discharge for him, that he had consistently been a patient at the VA hospital undergoing treatment for alcoholism, that he had been drinking on the night of the incident involved, that he saw Mr. Hicks as they both were near the Dutch House, that defendant at the time was in the process of transferring the pistol he had from a bag it was in "to put it under my shirt." His testimony continues as follows:
"Q. What happened next, Albert?
 "A. As I took the gun out of the bag to put it under my belt under my shirt, he began to look frightened at the sight of the gun. And so I told him that I was an FBI agent, and he looked even more frightened then. And so I told him, well show me some identification or you are under arrest; I am the FBI. And he made a frightened gesture and went inside the Dutch House. And as he did, I went in behind him. And there were two people and a woman and Mr. Hicks standing at the stool there, and she told me that do not come in here with that gun. So I told her, also, that I was an FBI agent and for them to stay there until I got back, that I was going to get another agent. And I left."
The defendant made it reasonably clear from his testimony that his reason for stating that he was an FBI agent was to assure the victim and others that he had a legal right to have a pistol. He denied putting the pistol to the back of Mr. Hicks and denied any intentional or threatening use or display of the pistol. He was twenty-six years of age at the time of the trial and was supported as to his alcohol problem and as to the connection between it and his other faults and criminal conduct with the onset of his trouble in Vietnam. In sentencing the defendant to imprisonment for life, which the trial court was mandated to do by reason of two previous felony convictions, the court said:
 "And I will note on the Record that you do have an alcohol problem and for whatever treatment they can give you to help you."
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the *Page 1357 
provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.