494 So.2d 705 (1985)
Perry Demon PARRISH
v.
STATE.
4 Div. 343.
Court of Criminal Appeals of Alabama.
May 14, 1985.
Rehearing Denied April 22, 1986.
Certiorari Denied August 22, 1986.
*706 Ira De Ment and Ronald W. Wise, Montgomery, for appellant.
Charles A. Graddick, Atty. Gen., and James B. Prude, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 85-916.
McMILLAN, Judge.
From a conviction of first-degree sexual abuse and a sentence of 20 years under the Alabama Habitual Felony Offender Act, this appeal follows. Based upon the totality of the circumstances, the express wording of the sexual abuse statutes, and this Court's interpretations of those statutes, the decision of the trial court is due to be affirmed.
At trial, the victim testified that she was 12 years old at the time the events occurred. On the day in question, the victim had gone boating with her brother, her mother, and her father (the victim's parents were divorced and custody of the victim was awarded to her mother). After the outing, the victim was very tired and was also sick to her stomach. Her mother had been dating the appellant and they went to his mother's house on Arnold Street, where he was living.[1] Since the victim was ill, she lay down inside the house while her mother remained on the porch. At that time, the appellant was not at the house, since he had gone out with "a bunch of his friends". Later on, the appellant arrived with his friends and the victim heard "hollering." After a while, the appellant came in and lay beside the victim on the bed. The appellant *707 put his hand up the victim's "britches" and touched her private parts, while he held her down "with his foot over my leg." The victim pretended to wake up and the appellant left. She then went to the bathroom and discovered that she was bleeding. Throughout the ordeal, the victim's mother remained on the porch.
The victim testified that she did not immediately tell her mother what had happened, since this had happened before and when she tried to talk to her mother about it, her mother had ignored her. On an earlier occasion, the victim, the victim's mother, and the appellant were sleeping together in the same bed. During the night, the appellant touched her private parts in the same manner as described above. When the victim tried to talk to her mother about the attack, her mother told her she would talk to her about it later. The victim stated that she assumed her mother would talk to the appellant so she did not tell anyone else at that time. However, she told her father after the second incident and he then took her to the police station.
On cross-examination, the victim testified that the sexual attacks occurred at the appellant's mother's house on Cawthorn Street, as well as at her house on Arnold Street. After the second incident on Arnold Street, she went to the bathroom and discovered blood in her panties. The victim also testified that "... I wasn't real sure what it was and I was kind of scared." After she told her father, she was taken to the hospital and was examined by a physician. The victim's father testified that when his daughter first began to tell him about what had happened, he did not let her finish and took her directly to the police department.
The State called Jamie Grace, a Sergeant with the Andalusia Police Department to the stand. On July 23, 1983, the witness testified, she talked with the victim concerning an incident involving the appellant. The witness was told that one incident occurred in a house on Arnold Street and another occurred on Cawthorn Street. The witness recommended that the child be taken to a hospital since she was bleeding vaginally. The information given by the child to this witness was consistent and at the time the questioning took place, the victim's father was not in the room; neither was the victim's mother. Additionally, it did not appear that the victim had been coached in any way. According to the witness, the victim explained to her that the lapse of time between the occurrence of the assault and the report to the police was due to the fact that the victim's mother had custody of the victim and the father had only visitation rights. The witness also stated that no complaint was received from the victim's mother.
On behalf of the State, Dr. Joe Sanders testified that he examined the victim for signs of sexual molestation. Although the physical findings of the examination showed no signs of trauma, the doctor testified that he would not expect to find positive physical findings where sexual contact had occurred two or three months earlier. At the time of the examination, the victim had not reached puberty. Also, the witness testified that even if something more than superficial damage had been done to the victim, the damage could have healed in the intervening time.
The State also called the victim's mother, who testified that she was divorced from the victim's father and had been spending a great deal of time with the appellant. She testified that they had been dating and were sleeping together. The witness testified that the second incident occurred after the witness, her son, her ex-husband, and the victim had been on a boat ride together. When they returned to the appellant's house on Arnold Street, the victim went in and lay down because she was sick and had a stomach ache. When the appellant came in with some of his friends, the witness could tell he had been drinking and was "on pot." Because of his condition, the witness became angry and remained on the front porch while the appellant went inside. About 30 or 45 minutes later, she went into the house and the appellant was in the *708 living room. Since she was still mad at him, they did not say anything to one another. When her daughter came out of the bedroom and told her she wanted to leave, the witness stated that she ignored her daughter and made her stay at the house until the witness was ready to leave.
On an earlier occasion, at the house on Cawthorn Street, the witness testified, she, the victim, and the appellant were in bed together. The witness testified that she was asleep and thought that everyone else was asleep. Later, however, her daughter tried to tell her what had happened, but, she said, "I again ignored her." The witness went on to testify that there was another event which indicated, to her mind, that the appellant might have sexually abused her daughter. On this particular occasion, the witness woke up and saw the appellant kneeling beside her daughter's bed. When she called his name, he came running back and said he was sleep-walking and had been looking for his fishing boots. Again, the witness testified that she "looked over it" and had no idea that this was going on. At one time, the appellant had told her about a friend of his who was "going with" a woman, as well as with the woman's daughter. At that time, the witness stated "this will never happen to my daughter."
The witness testified that when her daughter first told her about what was going on, she ignored her and did not take the time to listen to her. She did not do anything even after the incident where she observed the appellant kneeling next to her daughter's bed. Although the bedroom was illuminated by a street light, she could not tell what the appellant was doing. However, she could see that he was kneeling by her daughter's bed and when she called his name he came running back and made excuses for his being over there. The next day, he reminded her over and over again that he had really been walking in his sleep. At the time, the appellant was on the work release program from State prison.
The appellant, Perry Demon Parrish, testified in his own behalf. At the time of the incident, the appellant was serving a three-year prison sentence for second degree burglary and grand larceny and was living with his mother. His mother lived in a house on Cawthorn Street, but moved to a house on Arnold Street in June of 1983. The appellant met the victim's mother through her work while he was a trusty in the county jail, and they began an affair. The appellant testified that the victim's mother often brought her daughter to visit him. When they spent the night together in his mother's house on Cawthorn Street, they would all sleep together in one room. After he moved to his mother's house on Arnold Street, the appellant stated that he, the victim's mother, and the victim would all sleep together. Since the appellant's mother had dark curtains over the windows and the curtains were usually drawn, there was "no way" that the street light would have given enough light for the mother to see what she said she had seen. Although the appellant had sex with the victim's mother on several occasions, he denied that he had ever sexually abused or molested her daughter at "any time at any place."
On the day in question, the appellant testified that he had been drinking "just a tad" and had smoked marijuana but stated, "I wasn't at the time." Additionally, he said he was "a long ways from being drunk or intoxicated." As to the earlier incident, the appellant testified that he had never sexually molested the victim and had never said that he was sleep-walking. According to the appellant, one night he was coming back from the bathroom and bumped into the victim's mother because the room was so dark. During the time he was out of prison, he was on the "S.I.R. Program."
On behalf of the appellant, the appellant's mother was called to the stand. She testified that her son came to live with her when he was released from prison on a work release program in May of 1983. At that time, she was living on Cawthorn Street. Prior to that time, the appellant had been a trusty. Around the last of June, she moved to a house on Arnold *709 Street. On numerous occasions, the victim and the victim's mother would come to her house and spend the night. The witness stated that her son and the victim's mother were having an affair and they slept in the same room.

I
The first issue raised by the appellant questions the sufficiency of the State's evidence. As a threshold consideration, this court is required to view the evidence in a light most favorable to the prosecution. Gullatt v. State, 409 So.2d 466 (Ala.Cr.App.1981); Smelcher v. State, 385 So.2d 653 (Ala.Cr.App.1980). Where the evidence raises a question of fact which, if believed by the jury would be sufficient to sustain the conviction, the denial of a motion for acquittal or motion for new trial will not be considered error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969); Baker v. State, 338 So.2d 528 (Ala. Cr.App.1976). Any conflict in the evidence presents a question of fact for the jury. Hughes v. State, 412 So.2d 296 (Ala.Cr. App.1982); Gullatt v. State, supra; Minnifield v. State, 406 So.2d 1055 (Ala.Cr.App.), cert. denied, Ex parte Minnifield, 406 So.2d 1060 (Ala.1981). On appeal, a jury verdict will not be disturbed unless "... allowing all reasonable presumptions for its correctness, the preponderence of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust." (Citations Omitted.) Sales v. State, 435 So.2d 242, 246 (Ala.Cr. App.1983). See also: Ward v. State, 356 So.2d 238 (Ala.Cr.App.), cert. denied, 356 So.2d 242 (Ala.1978); Johnson v. State, 378 So.2d 1164 (Ala.Cr.App.), cert. quashed, 378 So.2d 1173 (Ala.1979); Duncan v. State, 436 So.2d 883 (Ala.Cr.App.1983), cert. denied, 464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 182 (1984). Using this standard of review, it is apparent that the State presented evidence which proved, beyond a reasonable doubt, that the appellant was guilty of first degree sexual abuse.
In brief, appellant argues that the State failed to prove a necessary element of the crime, since, according to the appellant, there was insufficient proof that the sexual contact was had by "forcible compulsion." Appellant argues that the failure of the 12-year-old victim to scream for her mother[2], "repel the appellant", or "in any other manner object to appellant's activities" requires that the jury verdict be overturned by this court. However, considering all of the circumstances surrounding the assault, the mere fact that an ill, 12-year-old girl makes "no effort to resist" a sexual confrontation does not negate the inference that sufficient "legal force" exists. Weatherford v. State, 369 So.2d 863, 872 (Ala.Cr.App.), cert. denied, 369 So.2d 873 (Ala.), cert. denied, 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 91 (1979).
Under Alabama law, in an appeal from a conviction of sexual abuse in the first degree, those factual issues involving "consent, force and intent to gratify the sexual desire of either [party]" are jury questions. Hutcherson v. State, 441 So.2d 1048, 1052 (Ala.Cr.App.1983). Any review made by this court of the presentation to the jury of evidence concerning these factual issues must be considered in a light most favorable to the State. Id. Using this standard of review, it is apparent that the jury considered the following significant facts in reaching its decision:
1. The victim was pre-puberty and was assaulted by her mother's boyfriend. On the day in question, the victim was ill and had gone to bed to rest.
2. The victim knew the appellant had returned when she heard the "hollering" of men who had been drinking and smoking marijuana.

*710 3. The appellant, who had been drinking, smoking marijuana, and shouting, got into bed with an ill, 12-year-old girl and held her down with his foot over her leg while he sexually molested her.
4. After the appellant left, the victim went to the bathroom and discovered that she was bleeding and that there was blood in her panties.
5. The victim testified that the appellant had sexually molested her on another occasion but that her mother had ignored her when she tried to tell her about the assault.
6. The victim's mother testified that she awoke one night and saw the appellant kneeling beside her daughter. When she spoke his name, the appellant ran back to her and explained that he had been "sleep-walking."
7. The victim was in a particularly vulnerable situation since the assault took place at the appellant's residence.[3]
When the issue of sufficiency of the evidence is raised in a sexual assault case, questions involving resistance and consent must be viewed "in the frame of the age of the assaulted girl." Smith v. State, 36 Ala.App. 209, 213, 55 So.2d 202 (1951), cert. denied, 256 Ala. 444, 55 So.2d 208 (1951). Viewing the above "totality of circumstances" from the point of view of the 12-year-old victim, it is apparent that the jury correctly concluded that there was a sufficient evidentiary showing of "forcible compulsion."
These facts, as outlined above, presented a sufficient basis of factual issues so that the case could be presented to the jury. Under the evidence, the issues of consent and force were questions for the jury to consider. Huterson v. State, 441 So.2d 1048 (Ala.Cr.App.1983). The evidence also presented a jury question as to whether the sexual contact was by forcible compulsion. Daniels v. State, 437 So.2d 614 (Ala.Cr.App.1983). In a consideration of the evidence, "no one is in a better position" to determine the issues of force and consent than the jury. Minnifield v. State, supra, 406 So.2d at 1057. In its deliberations, the jury also had the opportunity to consider certain factors, such as the "relative size of the parties, the age of each, [and] their social and racial differences." Herndon v. State, 2 Ala.App. 118, 126, 56 So. 85, 87 (1911).
Although appellant argues otherwise, it is apparent from the evidence that "forcible compulsion" as statutorily defined in § 13A-6-60(8), Code of Alabama, 1975, was sufficiently proved. In a recent sexual abuse case interpreting this Code section, this court concluded that proof of "violent physical compulsion" is not required in order to prove the element of "forcible compulsion." Avant v. State, 405 So.2d 159, 160 (Ala.Cr.App.1981). In reaching this decision, the following observation was made:
Although there was no testimony of violent physical compulsion, it is clear that the young complainant was in the hands of an adult male who completely overwhelmed him by strength. From the fact that appellant held the boy's leg when the boy tried to get away, the jury could reasonably infer that the 13 year old was subjected to physical force that overcame earnest resistance. (Emphasis added.) Id.

In the present case, the facts are remarkably similar to those in Avant, with one extremely significant distinction. In Avant, the victim was molested by a stranger. In the present case, however, the victim was assaulted by her mother's boyfriend and, on an earlier occasion, she had also been molested by the appellant while her mother was in the same room. This significant factual distinction should be used to weigh the improbability, under *711 the circumstances, of a violent struggle against a known attacker where the victim's complaint of a previous act of sexual molestation had been ignored by her own mother. As the Committee Comments which follow the Code section defining "lack of consent" note, any resistance on the part of a rape victim may be ineffective or impossible where she is "overpowered by a display of physical force, through threats, express or implied, or otherwise." Commentary, Alabama Code (1975), § 13A-6-70. Additionally, in sexual assault cases, resistance is often counter-productive, since the physical "resisting" movement of the victim may very well arouse, instead of repel, the assailant.[4]
Here, as in Avant, supra, the force was evident from the fact that the victim was held down by the appellant, who placed his foot over her leg.[5] Additionally, testimony concerning the physical injury suffered by the victim is an element which was properly considered by the jury in its deliberations, since the 12-year-old victim stated that she had blood in her panties after the assault. There was no evidence to show any other possible reason for the presence of blood other than the attack itself. Obviously, the jury concluded that some physical force must have been present where a prepubescent, 12-year-old female bleeds after her mother's boyfriend has sexual contact with her. Proof of physical injury, regardless of the severity of the injury, presents a jury question when considering the issue of "forcible compulsion." Daniels v. State, 437 So.2d 614 (Ala.Cr.App.1983).
The mere fact that the 12-year-old victim in this case pretended to be asleep would not mean that she expressly or impliedly acquiesced,[6] or otherwise consented to the appellant's sexual contact. This fact raised the inference that the victim was attempting to avoid a potentially violent confrontation with an intoxicated, obviously belligerent, adult male. Thus, in order to protect herself from the defendant, the victim pretended to be asleep.[7] Common sense dictates that a helpless victim may very well feign unconsciousness or pretend to be asleep in order to protect *712 himself/herself from a violent confrontation. Obviously, such protective action cannot be construed as "consent" to the wrongful acts, nor can it be used to ratify the wrongful acts. In an Alabama case written over twenty years ago, the appellate court concluded that the defendant's actions of climbing into bed with a sleeping woman "evinced a design to force himself upon [her]. Dormancy certainly cannot confer consent nor ratify." (citation omitted; emphasis added.) Davis v. State, 42 Ala.App. 374, 378, 165 So.2d 918, 922, cert. denied, 276 Ala. 703, 165 So.2d 927 (1964).
In the present case, the evidence shows that the 12-year-old victim was ill and had gone to bed to rest. The sounds of men "hollering" awakened her from her sleep when the appellant returned to the house. The appellant admitted that he had been drinking and there was conflicting testimony that he had also been smoking marijuana. According to the victim, the appellant held her down with his foot over her leg until she pretended to wake up. Considering these circumstances (the fact that the victim was a mere 12 years of age and the appellant was a mature man; the fact that the victim was ill and was awakened by the hostile sounds of men shouting; the fact that the appellant had been drinking, as well as possibly smoking marijuana; the fact that the appellant went into the sick child's bedroom, got into bed with her and held her down with his foot), we conclude, as an Illinois court did in a similar case, that there was sufficient presentation of evidence from which the jury could properly draw "an inference of force or threat of force." People v. Zeiger, 100 Ill.App.3d 515, 55 Ill.Dec. 855, 426 N.E.2d 1229, 1232 (1981).
In Zeiger[8] the Illinois court upheld a conviction of deviate sexual assault where a 15-year-old female was sexually molested by her girlfriend's stepfather. After drinking a large quantity of beer at a party given by the defendant for his stepdaughter, the victim fell asleep. When she woke up, she was "scared and upset" to find that the defendant was fondling her breasts. The defendant then perform certain deviate sex acts upon his victim. The victim testified that during the entire incident, she pretended to be sleeping "because her parents had told her never to fight in such a situation to avoid being hurt." 55 Ill.Dec. at 857, 426 N.E.2d at 1231. Although the defendant claimed that there was "no evidence of force or threat of force" to sustain the deviate sexual assault conviction, the Illinois court disagreed and reasoned that the following should be considered:
Among the circumstances to be considered are the differences in the age of defendant (36) and the victim (15), the victim's condition upon awaking in defendant's car in an unknown place, and defendant's actions in removing her clothes and laying [sic] on top of her. We conclude that, under all the circumstances, the jury could properly draw an inference of force or threat of force from the evidence sufficient to support the convictions for deviate sexual assault. 426 N.E.2d at 1232.
Another 1981 Illinois case also concluded that "force or threat of force" may be present in a sexual assault case even when the victim "pretended to be asleep" during the attack. People v. Davis, 95 Ill.App.3d 161, 50 Ill.Dec. 574, 419 N.E.2d 682 (1981).
In Davis, the victim was a 16-year-old boy who had gone to the defendant's brother's house to babysit. Other people were present on this particular night and there was some evidence that marijuana was smoked during the course of the evening. The victim spent the night at the house and was awakened by the defendant's sexual fondling. According to the victim's testimony, he pretended to be asleep during the entire fifteen minute sexual assault and did not "cry out, scream or physically resist the defendant by pushing him off or striking *713 him." 50 Ill.Dec. at 576, 419 N.E.2d at 684. The Illinois court examined the issue of "force or threat of force" and concluded that it was obvious that the victim did not "voluntarily consent to the assault," notwithstanding the victim's admission that "it would have appeared to the one performing these acts upon him that he was cooperating." 50 Ill.Dec. at 579. 419 N.E.2d at 687. As a recent California case noted:
Naivete may excuse boorishness, but a criminal invasion of sexual privacy does not become a non-rape merely because the victim is too fearful or hesitant to say something to the effect that "I guess you know I don't want you to do this." People v. Bermudez, 157 Cal.App.3d 619, 203 Cal.Rptr. 728, 730 (1984).
This is especially true when one considers the physical and emotional vulnerability of a young victim in a sexual assault or rape situation. (See, for example, People v. Sanchez, 110 Ill.App.3d 893, 66 Ill.Dec. 569, 443 N.E.2d 252 (1982), where the court noted that the 14-year-old rape victim's "distinct physical and emotional disadvantage" made effective resistance or escape improbable.) As the Kentucky court has noted, even if the victim's fears are unreasonable, the person who takes advantage of those "unreasonable" fears should not be allowed to escape punishment "anymore than the swindler who cheats gullible people by false statements which they should have found incredible." Salsman v. Commonwealth, 565 S.W.2d 638, 641 (Ky.Ct. App.1978).
Due to the relative "youth" of the sexual abuse statutes, it is apparent that a majority of those Alabama cases which have considered the element of "forcible compulsion" deal with the testimony of mature victims in rape or sodomy cases. Here, however, we are dealing factually with the sexual abuse of a child. Thus, the "totality of the circumstances" should be considered in deciding whether there was sufficient evidence of forcible compulsion under the statute. As noted above, this court has concluded in at least one rape case that the absence of resistance on the part of a rape victim would not preclude the finding of sufficient "forcible compulsion" when "all of the circumstances" of the attack are taken into consideration. Weatherford v. State, 369 So.2d 863, 872 (Ala.Cr.App.), cert. denied, 369 So.2d 873 (Ala.), cert. denied, 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 91 (1979).
Early Alabama cases which deal with the more serious offense of rape have held that evidence of actual force is not required in order to uphold a conviction, since the force may be constructive or implied. McQuirk v. State, 84 Ala. 435, 4 So. 775 (1887); Posey v. State, 143 Ala. 54, 38 So. 1019 (1905); Herndon v. State, 2 Ala.App. 118, 56 So. 85 (1911); Struggs v. State, 372 So.2d 49 (Ala.Cr.App.), cert. denied, 372 So.2d 55 (Ala.1979); Weatherford v. State, 369 So.2d 863 (Ala.Cr.App.), cert. denied, 369 So.2d 873 (Ala.1979), cert. denied, 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 91 (1979). The court in McQuirk went on to consider certain circumstances which would indicate that there was no consent to the intercourse:
If the woman is mentally unconscious from drink, or sleep, or from other cause is in a state of stupification, so that the act of the unlawful carnal knowledge on the part of the man is committed without her conscious and voluntary permission, the idea of force is necessarily involved in the wrongful act itselfthe act of penetration. 84 Ala. at 436.
Under the evidence presented in this case, there is no indication that the victim requested, encouraged, consented to or otherwise gave permission or sanction to, the appellant's actions. Additionally, there is nothing in the record which would indicate that the appellant could have entertained, at any time, "any idea or expectation of permissive" sexual contact. Pumphrey v. State, 156 Ala. 103, 107, 47 So. 156 (1908) (After a review of the "peculiar facts and circumstances," conviction for assault with intent to ravish upheld where woman was awakened by man in the middle of the night who proceeded to get into bed with her). Based upon the "totality of the circumstances" in this case, we conclude that *714 the State presented evidence which proved, beyond a reasonable doubt, that the appellant was guilty of first degree sexual abuse. Thus, the trial court's denial of defendant's motions for acquittal and new trial was proper.

II.
The second issue raised by appellant concerns the correctness and adequacy of the jury charges given by the trial court. No objection was made at the trial court level, however and appellant candidly admits in his brief that he is "well aware" of the Alabama requirement that "a court's charge must be objected to at trial before it can be raised on appeal." Appellant contends that, in this case, the failure of the trial court to read the statutory definition of "forcible compulsion" constitutes an error of a "fundamental constitutional level."[9] Unfortunately for appellant, this issue has been decided against his position. Davidson v. State, 360 So.2d 728 (Ala.Cr. App.), cert. denied, Ex parte State ex rel. Attorney General, 360 So.2d 731 (Ala. 1978). In Davidson, Judge Bowen stated as follows:
... even where the judge fails to charge the jury on the elements of the offense, this error may not be raised for the first time on appeal. To constitute ground for reversal, objection or exception to the oral charge is necessary. Id. [360 So.2d] at 730.
The policy behind this requirement is obvious, since a timely objection allows the trial court to "cure errors at that level." Allen v. State, 414 So.2d 989, 991 (Ala.Cr.App. 1981), affirmed 414 So.2d 993 (Ala.1982). Thus, even if the trial court erred in its charge to the jury, reversal would not be required where there was no objection at trial. Payne v. State, 52 Ala.App. 453, 293 So.2d 877 (1974).
Where the trial court omits a portion of a charge which defendant desires, the proper procedure is to request that written charges be submitted to the jury. Hall v. State, 375 So.2d 536 (Ala.Cr.App. 1979). Failure to present such a written charge to the trial court requires a holding that the issue has not been properly preserved for review. Lewis v. State, 439 So.2d 1353 (Ala.Cr.App.1983). In order to preserve error, objection must be made at the trial court level to the oral charge. Geter v. State, 468 So.2d 197 (Ala.Cr.App. 1985), Richardson v. State, 456 So.2d 1152 (Ala.Cr.App.1984). Failure to request a written charge constitutes a waiver of review by this court as to the possible errors. Smith v. State, 53 Ala.App. 657, 303 So.2d 157 (1974). Failure to either request a written charge or object at the trial court level means that the issue has not been properly preserved for appellate review. Burkett v. State, 439 So.2d 737 (Ala.Cr. App.1983).
Although the issue of the failure to define the element of "forcible compulsion" *715 was not raised, a recent case concerning the propriety of a juror's looking up the definition of "rape" in a dictionary contains the following language:
[The statute] which defines the offense [of rape] as the engagement by a male "in sexual intercourse with a female by forcible compulsion," is so clear and unambiguous that no person intelligent enough to be a juror could err as to the meaning. Davenport v. State, 426 So.2d 473, 476 (Ala.Cr.App.1981).
The court concluded that there was no "reasonable basis" for the contention that the juror who had consulted the dictionary had been misled in considering the sole issue in the case: "whether his intercourse with the alleged victim was by `forcible compulsion.'" Id. Since there was no obvious prejudice to the appellant as a result of the omission and there was no objection at the trial court level, we will not indulge, at this point, in what has been referred to as "extravagant protection." Namet v. United States, 373 U.S. 179, 190, 83 S.Ct. 1151, 1156, 10 L.Ed.2d 278 (1962), quoted in Henderson v. Kibbe, 431 U.S. 145, 154, n. 12 97 S.Ct. 1730, 1736 n. 12, 52 L.Ed.2d 203 (1971).
As to the propriety of the court's charge, it has been long settled that the force necessary for the proof of a rape case need not be actual physical force; instead, the force may be constructive or implied. McQuirk v. State, 84 Ala. 435, 4 So. 775 (1888); Posey v. State, 143 Ala. 54, 38 So. 1019 (1905); Herndon v. State, 2 Ala.App. 118, 56 So. 85 (1911); Struggs v. State, 372 So.2d 49 (Ala.Cr.App.), cert. denied, 372 So.2d 55 (Ala.1979); Weatherford v. State, 369 So.2d 863 (Ala.Cr.App.), cert. denied, 369 So.2d 873 (Ala.1979), cert. denied, 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 91 (1979); Commentary, § 13A-6-70, Code of Alabama 1975. Thus, in the present case, there was no "incorrect statement of law" on the part of the trial court. Additionally, for the reasons outlined above, the failure to object to the correctness of the instructions precludes the possibility that this issue may be raised for the first time on appeal.
For the reasons stated herein, the decision of the trial court is due to be affirmed.
AFFIRMED.
TYSON and TAYLOR, JJ., concur.
BOWEN, P.J., and PATTERSON, J., dissent, with opinion by BOWEN, P.J.
BOWEN, Presiding Judge, dissenting.
There is something inherently and fundamentally wrong with the majority opinion. After much straining and exertion, the majority reaches the conclusion that "[v]iewing the above `totality of the circumstances' from the point of view of the 12-year-old victim, it is apparent that the jury correctly concluded that there was a sufficient evidentiary showing of `forcible compulsion.' " However, since the jury was never given the definition of "forcible compulsion," they had no proper standard for determining whether or not the defendant's reprehensible conduct constituted forcible compulsion as defined by Alabama Code 1975, § 13A-6-60(8). The basis for Part I of the majority opinion is shattered by Part II.
Like the trial court, the majority attempts to define the term without reference to the statutory definition. "Forcible compulsion. Physical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person."
The majority opinion expands the definition of forcible compulsion far beyond that expressly stated in the statute. On this issue, the victim only testified the defendant was "holding [her] down" with "his foot over [her] leg." The victim did not testify or give any indication that she pretended to be asleep in order to protect herself or avoid a violent confrontation. The majority also misses the important distinction between this case and Avant v. State, 405 So.2d 159, 160 (Ala.Cr.App.1981). In Avant, the accused "held the boy's leg when the boy tried to get away." (Emphasis *716 added). Here, there was no "earnest resistance".
Based on the evidence presented by the State, the defendant deserves to be prosecuted and convicted for the proper offense. The offense of sexual abuse in the second degree, § 13A-6-67(a)(2), is designed to cover the present factual situation. The defendant's conduct constitutes sexual abuse in the second degree, not sexual abuse in the first degree. For these reasons, I dissent.
NOTES
[1] The appellant was living with his mother in a house on Arnold Street. Before moving to the house on Arnold Street, the appellant and his mother lived in a house on Cawthorn Street.
[2] Of course, in the present case, the victim's mother had previously ignored a complaint from her daughter that the appellant had sexually molested her. Additionally, when one considers the situation from the child's point of view, it is "understandable and not unreasonable" that a 12-year-old victim, awakened from her sleep, might not cry out or try to get help during a sexual attack where the assailant is not a stranger. People v. Davis, 95 Ill.App.3d 161, 50 Ill.Dec. 574, 419 N.E.2d 682, 686 (1981).
[3] In a recent California case involving "date rape", the California Court considered as an aggravating factor for sentencing purposes the fact that the victims were assaulted in the rapist's apartment and noted that "... a person in a private residence, especially that of her attacker, is more vulnerable than a woman fending off a rapist in a car on a dark street or in a public restroom. [citations omitted]." People v. Salazar, 144 Cal.App.3d 799, 193 Cal.Rptr. 1, 9 (1983).
[4] In a California "date rape" case, one of the victims realized that her struggle merely aroused her attacker and another victim testified that the rapist was unable to maintain an erection when she "played dead." People v. Salazar, 144 Cal.App.3d 799, 193 Cal.Rptr. 13 (1980).
[5] See, for example, Norris v. State, 87 Ala. 85, 6 So. 371 (1888), where the court upheld an assault conviction and noted that the "imposition of [the defendant's] arms on [the victim's] person, and holding and pressing her against her will is, in legal contemplation, force, though there may have been no intention to hurt." 87 Ala. at 88, 6 So. at 372.
[6] Of course, proof of forcible compulsion is considered "conclusively presumptive evidence" of lack of consent. Commentary, § 13A-6-70, Code of Alabama (1975). Where the offense charged is sexual abuse, however, "lack of consent" can be proved not only by forcible compulsion, but also by "any circumstances ... in which the victim does not expressly or impliedly acquiesce in the actor's conduct." § 13A-6-70(b)(3), Code of Alabama (1975). As the Committee Comments which follow this Code section note, the term "without consent" has been legislatively expanded by the above provision where the offense is sexual abuse.
[7] State v. Roseman, 583 S.W.2d 232 (Mo.App. 1979) (victim of rape/sodomy feigned unconsciousness); State v. Silhan, 302 N.C. 223, 275 S.E.2d 450 (1981) (rape victim pretended to be dead); Harding v. State, ___ Ind. ___, 457 N.E.2d 1098 (1984) (rape victim pretended to be dead); People v. Jones, 70 Ill.App.3d 338, 26 III.Dec. 180, 387 N.E.2d 1010 (1979) (rape victim pretended to be dead); People v. Hahn, 147 Cal.App.2d 308, 305 P.2d 192 (1956) (after assault by robber, victim pretended to be unconscious); State v. Porter, 640 S.W.2d 125 (Mo. 1982) (robbery victim pretended to be dead after being shot); State v. Laubach, 220 Kan. 679, 556 P.2d 405 (1978) (night clerk feigns unconsciousness during robbery after being attacked); Jones v. People, 146 Colo. 40, 360 P.2d 686 (1961) (bellboy awakens and, fearing danger, pretends to be asleep while robbery/murder takes place); Johnson v. State, 2 Md.App. 235, 234 A.2d 167 (1967) (assault victim "feigned unconsciousness to prevent further injury"); State v. Parker, 282 Minn. 343, 164 N.W.2d 633 (1969) (assault victim feigned unconsciousness); Born v. State, 633 P.2d 1021 (Alaska App.1981) (rape victim's friend pretended to be asleep while assault took place).
[8] Under Illinois law at this time, the offense of "deviate sexual assault" was defined where the actor "by force or threat of force, compels any other person to perform or submit to any act of deviate sexual conduct." Ill.Code, Ch. 38, ¶ 11-3. On July 1, 1984, this statute was repealed when the State of Illinois revised its sex offense statutes.
[9] Although appellant submits that the deficiency inthe trial court's jury charges are of a "fundamental constitutional level" so that an objection at trial is not required, he cites no cases in support of his position. Our review of the law in other jurisdictions indicates that there is a split of authority. At least one New York case indicates that the issue of error in a jury charge concerning "forcible compulsion" must be properly preserved for review. People v. Kranitz, 104 App.Div.2d 956, 480 N.Y.S.2d 573 (1984). In the case of State v. Dighera, 617 S.W.2d 524 (Mo.App.1981), the Missouri court concluded that the failure to give a definition of "reckless" to the jury in a rape/sodomy case was not "plain error." (Note, however, that definitions of "consent" and "forcible compulsion" were given to the jury. Id at 535, n. 11). Similarly, Missouri appellate courts have concluded that failure of the court to define "serious physical injury" would not be considered prejudicial or fundamental error where there was no objection at the trial court level. State v. Evans, 660 S.W.2d 433 (Mo.App.1983); State v. Chaney, 663 S.W.2d 279 (Mo.App.1983).

The Washington courts have also concluded that exceptions to jury instructions cannot be reviewed for the first time on appeal unless a constitutional right is involved. State v. Byrd, 30 Wash.App. 794, 638 P.2d 601 (1981). Thus, no error was presented where the trial court (in a rape case) did not give instructions on the issues of force, resistance, and consent, and no request was made at that time. State v. Hanson, 20 Wash.App. 579, 581 P.2d 589 (1978). It would appear, however, that certain Texas decisions are to the contrary. Delgado v. State, 628 S.W.2d 68 (Tex.Cr.App.1982).